**John ALLEN; Terry Smith, Plaintiffs–Appellees,**

v.

**Ted SAKAI; Harold Falk; John Cabral; Clayton Frank; Adele Fujita; Leonard Gonsalves; Leiann Kaimikaua; Gary Kaplan; Gerald Mendiola; Cinda Sandin; Francis Sequiera; Laurence Shohet; William Oku; Malcolm Lee; Terrence Allen; and Ray Suenaga, in their official and individual capacities, Defendants–Appellants.**

**No. 93–16780.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 3, 1994.

Decided Nov. 15, 1994.

Amended Opinion March 1, 1995.

Steven S. Michaels, Glenn S. Grayson, Deputy Atty. Gen.; Honolulu, Hawai'i, for defendants-appellants.

John L. Hill, Charles Schurter, Margaret Kivinski, Student Interns, Western State University Legal Clinic, Irvine, CA, for plaintiffs-appellees.

Before: FLETCHER, and FERNANDEZ, Circuit Judges, and SEDWICK,* District Judge.

### ORDER AMENDING OPINION AND DENYING PETITION FOR REHEARING AND REJECTING EN BANC SUGGESTION

The opinion filed November 15, 1994 [40 F.3d 1001] is amended as follows:

Slip op. at 13860 [p. 1004]: Insert before first full paragraph (The last sentence of insert is first sentence of first full paragraph):

An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective. *Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Under the objective

---

* Hon. John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation.

requirement, the prison official's acts or omissions must deprive an inmate of " 'the minimal civilized measure of life's necessities.' " *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981)). The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference. *Farmer,* —— U.S. at ——, 114 S.Ct. at 1979.

We conclude that Smith has met the objective element of the Eighth Amendment analysis by alleging the deprivation of a basic human need. *See Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991).

Slip op. at 13861–62 [p. 1004]: Replace first full paragraph on page 13861 [p. 1004] and following paragraph that spans pages 13861–62, including footnote 5 [p. 1004], with:

Smith's incarceration in SHU was indefinite and therefore potentially long-term, and under admittedly "harsh" conditions. After *Spain* and *Toussaint,* defendants cannot legitimately claim that their duty to provide regular outdoor exercise to Smith was not clearly established. Smith has met the objective requirement of the Eighth Amendment analysis by alleging the deprivation of what this court has defined as a basic human need.[5]

Smith has also adduced sufficient evidence of the subjective prong to defeat summary judgment. The defendants acknowledge that HHSF had a goal of providing five hours exercise per week and that, despite their awareness of this goal, they knowingly failed to provide outdoor recreation to Smith. Thus, this is not a case where the defendants claim that they were unaware of either the circumstances resulting in the alleged deprivation or the likelihood that the deprivation would occur. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1982 (permitting officials to avoid liability under the Eighth Amendment by proving they were unaware of facts causing deprivation or believed that risk of deprivation was unlikely).

The defendants attempt to excuse the deprivation by explaining that logistical problems made it difficult to provide adequate exercise. According to the defendants, scheduling an inmate's time in the exercise yard was difficult because, for security reasons, inmates had to be accompanied to the recreation yard by a guard and only one inmate could use the recreation yard at a time. We recognize that the practical difficulties that arise in administering a prison facility from time to time might justify an occasional and brief deprivation of an inmate's opportunity to exercise outside. However, we cannot accept the defendants' vague reference to logistical problems as necessarily justifying, as a matter of law at the summary judgment stage, the deprivation that took place here. A rational fact-finder after hearing the evidence might determine that the defendants acted with at least deliberate indifference to Smith's basic human needs, as defined by *Spain,* by placing inconsequential logistical concerns that might be no more than matters of convenience above Smith's need for exercise. *See Harris v. Angelina County,* 31 F.3d 331, 335–36 (5th Cir.1994) (practical difficulties to mitigating prison overcrowding did not establish as a matter of law that prison officials had not acted with deliberate indifference when officials were aware of the conditions and had available alternative avenues to address the conditions).

Because Smith has alleged a violation of clearly established law, we affirm the district court's denial of defendants' motion for summary judgment on Smith's Eighth Amendment claim.

---

[5] Defendants also argue that *Spain* is inapplicable to cases involving neither a complete nor long-term denial of outdoor exercise. They note that the plaintiffs in *Spain* had been deprived completely of outdoor exercise for four years and as a matter of prison policy, whereas Smith's claim is that, for six weeks, he was permitted out of his cell only weekly. Although the length and severity of the alleged illegal conduct may be critical questions at trial, they are not dispositive at the summary judgment stage.

Slip op. at 13865–66 [pp. 1006–07]: Replace the second [third] full paragraph on page 13865 [p. 1006] and the first two para-

graphs on page 13866 [third & fourth paragraphs on p. 1006 and continued to p. 1007], and footnotes 10–12 with:

■ Defendants also urge that they are entitled to summary judgment on the ground of qualified immunity because Smith has failed to make an adequate showing that the denial of photocopying services and the use of a pen actually prejudiced his right of access to the courts. A prisoner asserting a "non-core" violation of *Bounds* must allege an "actual injury" resulting from denial of his right to court access. *Vandelft v. Moses,* 31 F.3d 794, 796 (9th Cir.1994); *Sands v. Lewis,* 886 F.2d 1166, 1171 (9th Cir.1989). Because Smith does not challenge the adequacy of a law library or alternative sources of legal knowledge, he must identify "some specific instance in which [he] was actually denied access to the courts." *Id.* (quotations and citations omitted).

■ As an initial matter, we must decide whether this issue is properly before us in an interlocutory appeal from the denial of the defendants' claim of qualified immunity. A defendant cannot inject into an interlocutory appeal issues that are otherwise not immediately appealable. *See Abney v. United States,* 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977) ("such claims are appealable if, and only if, they too fall within *Cohen*'s collateral-order exception to the final-judgment rule").

"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley,* 500 U.S. 226, 132 [111 S.Ct. 1789, 1793, 114 L.Ed.2d 277] (1991). Thus, we must determine whether Smith has made an adequate showing of "actual injury" to court access as a necessary predicate to showing that the defendants violated a constitutional right.

Smith has identified two instances where the defendants' denial of photocopying services and the use of a pen resulted in the denial of his access to the courts. His right to court access was denied when the state court returned his second petition for post-conviction relief because he had not enclosed multiple copies. His right to court access was denied a second time when he attempted to appeal the district court's denial of the petition and the state court returned his notice of appeal unfiled because it was not completed in black ink. The court then dismissed the appeal as untimely.

The defendants argue that Smith's right to court access was not impaired by any deprivation of photocopying services because the state court eventually did consider his second petition for post-conviction relief.[10] We disagree. Smith was able to duplicate his petition and have it filed with the court, but not until *after* the state court refused to accept a single copy for filing. Once Smith submitted his petition to the court but filing was refused, he was injured.[11]

■ The defendants also argue that Smith's right to court access has not been impaired because his second petition for post-conviction relief and his appeal of its denial were meritless. Their argument misconstrues both the nature of the right protected by *Bounds* and the "actual injury" requirement. Inmates have an established right to present their legal claims to the courts and to have them considered *by the courts.*

All that *Sands* requires is a showing that the plaintiff could not present a claim to the courts because of the state's failure to fulfill its constitutional obligations. A prisoner need not show, ex post, that he would have been successful on the merits had his claim been considered. To hold otherwise would permit prison officials to substitute their judgment for the courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim would eventually be deemed frivolous.[12]

We agree with the district court that Smith's showing is adequate to defeat summary judgment: he has alleged conduct on the part of defendants that, if true, violates clearly established constitutional rights,

defeating defendants' claims to qualified immunity.

[10] Smith was able to refile the petition because the Hawaii Rules of Penal Procedure do not impose a filing deadline on petitions for post-conviction relief. *See* Haw.R.Pen.Proc. 40.

[11] Thus, this case differs from *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir.1982), which we cited with approval in *Sands. See* 886 F.2d at 1170. In *Hudson*, the Third Circuit held that a plaintiff had not fulfilled the actual injury requirement when his only injury "was his being required on one occasion to wait ten days to have a document notarized. As a result, *he submitted the document later than he would have liked* but prior to the date it was due." 678 F.2d at 466 (emphasis added). Smith did not simply have to wait a few days to make photocopies and submit his petition to the court. He alleges that the defendants denied him access to photocopies altogether and that, as a result, the state court returned his petition, refusing to file it.

[12] The defendants' reliance on *McDonald v. Smith*, 472 U.S. 479, 484, 105 S.Ct. 2787, 2790–91, 86 L.Ed.2d 384 (1985), is wholly misplaced. In *McDonald*, the Court repeated the well accepted principle that the First Amendment right to petition does not protect frivolous litigation. *Id.* at 484, 105 S.Ct. at 2790–91 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983)). Although this principle would permit, for instance, a state court to dismiss frivolous claims and sanction the litigants who present them, it would not allow prison officials to deny inmates the opportunity to present their claims to the courts. Moreover, the fact that damages properly assessed in a cause of action arising when a prison official denies court access to pursue a meritless claim would be nominal does not foreclose the cause of action, because the claim's merit is for a court, not a prison official to determine.

With these revisions, the petition for rehearing is denied.

The full court has been advised of the suggestion for rehearing en banc and no judge of the court has requested a vote on it. Fed.R.App.P. 35(b).

The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.

1. Inmates at HHSF were subdivided into four categories or "phases," each with its own housing area in the facility. All new inmates were assigned to Phase I and resided in SHU, where they encountered the harshest conditions of confinement found at HHSF. With good behavior, inmates could advance to other phases and correspondingly more tolerable housing conditions. Smith was a Phase I inmate during the entire period covered by this lawsuit.

2. On or about September 1991, the State of Hawaii converted HHSF into its special needs

## OPINION

FLETCHER, Circuit Judge:

Hawaii state prison officials, defendants in a 42 U.S.C. § 1983 suit, appeal the denial of summary judgment on their claim of qualified immunity. We affirm.

### I

Terry Smith was transferred to the Special Holding Unit ("SHU")[1] of the Halawa High Security Facility ("HHSF")[2] after multiple disciplinary offenses ranging from counterfeiting documents to assault. Smith and others, proceeding *pro se*, filed a federal civil suit against various prison officials under 42 U.S.C. § 1983.[3] Defendants moved for summary judgment on the grounds that they enjoyed qualified immunity and that the plaintiffs had failed to state a claim for which relief could be granted. The magistrate recommended that the defendants' motion be granted on all of Smith's claims except his claims that defendants deprived him of sufficient outdoor recreation, the use of a pen, and access to photocopies. The district court issued a written order modifying the magistrate's findings but adopting his recommendation to deny defendants' motion for summary judgment as to Smith's remaining three claims. Defendants filed a timely appeal of the district court's order.

### II

Smith alleges that, for a six-week period during his longer confinement at SHU, the defendants violated his right to freedom from cruel and unusual punishment by providing him only 45 minutes per week of outdoor exercise. He also alleges that the defendants violated his right to access to the

facility. It is no longer a maximum security facility, and Smith no longer resides there. Therefore, Smith's claims are for damages only.

3. The original complaint alleged thirteen causes of action, and several new issues were raised in subsequent petitions for preliminary relief. During the lengthy course of this litigation, most of Smith's co-plaintiffs dropped out and several claims were dismissed. The only claims remaining on appeal concern alleged deprivations of Smith's constitutional rights.

courts by depriving him of the use of a pen and photocopying services. The sole issue on appeal is whether the defendants were entitled as state officials at the summary judgment stage to dismissal on the ground of qualified immunity. Although a denial of summary judgment generally is not a "final order" over which this court has jurisdiction, 28 U.S.C. § 1291, a denial of qualified immunity may be reviewed under the collateral order doctrine. *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985); *see generally Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We review de novo. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993).

Defendants are entitled to qualified immunity only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2729, 73 L.Ed.2d 396 (1982). Although a plaintiff must do more than offer conclusory allegations that the defendant violated a clearly established constitutional right, a public official is not entitled to qualified immunity when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

### III

Smith alleges that the defendants violated his right to freedom from cruel and unusual punishment by depriving him of adequate outdoor exercise. Phase I inmates were confined to their cells almost twenty-four hours per day. Although prison officials assert HHSF had a goal of providing Phase I inmates with five hours of access per week to the facility's outdoor recreation area, they admit that during a six-week period Smith was permitted outside of his cell for outdoor recreation only 45 minutes per week.

An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective.

*Farmer v. Brennan,* — U.S. —, —, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). Under the objective requirement, the prison official's acts or omissions must deprive an inmate of " 'the minimal civilized measure of life's necessities.' " *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981)). The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference. *Farmer,* — U.S. at —, 114 S.Ct. at 1979.

We conclude that Smith has met the objective element of the Eighth Amendment analysis by alleging the deprivation of a basic human need. *See Wilson v. Seiter,* 501 U.S. 294, 304, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991). Before the period in question, several circuits, including this one, had held that deprivation of outdoor exercise could constitute cruel and unusual punishment. *Spain v. Procunier,* 600 F.2d 189 (9th Cir. 1979); *Davenport v. DeRobertis,* 844 F.2d 1310, 1314–15 (7th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Ruiz v. Estelle,* 679 F.2d 1115, 1151–52, *vacated in part as moot,* 688 F.2d 266 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Campbell v. Cauthron,* 623 F.2d 503, 507 (8th Cir.1980). This court recognized in *Spain* that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates." *Spain,* 600 F.2d at 199. We emphasized that the plaintiffs were in long-term incarceration where they were in continuous segregation, generally spending twenty-four hours each day alone in their cells. *Id.* Under those conditions, deprivation of outdoor exercise constituted cruel and unusual punishment. *Id.; see also Toussaint v. Yockey,* 722 F.2d 1490, 1493 (9th Cir.1984) (denial of outdoor exercise to inmates assigned to administrative segregation for over one year raised "substantial constitutional question").

Defendants' analogy to *LeMaire v. Maass,* 12 F.3d 1444, 1458 (9th Cir.1993), is flawed. In *LeMaire* we found no constitutional violation from a termination of the plaintiff's exercise privileges "for considerable periods of time" after he attacked two correctional offi-

cers with a weapon as he left the yard, then vowed to attack them again. Although Smith was placed in SHU at HHSF because of disciplinary infractions,[4] unlike the plaintiff in *LeMaire,* Smith did not lose his exercise privileges based on a determination by prison officials that he presented a "grave security risk when outside his cell" and that measures were necessary to deter violent behavior separating Smith from the rest of the population in SHU. *See LeMaire,* 12 F.3d at 1458.

Smith's incarceration in SHU was indefinite and therefore potentially long-term, and under admittedly "harsh" conditions. After *Spain* and *Toussaint,* defendants cannot legitimately claim that their duty to provide regular outdoor exercise to Smith was not clearly established. Smith has met the objective requirement of the Eighth Amendment analysis by alleging the deprivation of what this court has defined as a basic human need.[5]

Smith has also adduced sufficient evidence of the subjective prong to defeat summary judgment. The defendants acknowledge that HHSF had a goal of providing five hours exercise per week and that, despite their awareness of this goal, they knowingly failed to provide outdoor recreation to Smith. Thus, this is not a case where the defendants claim that they were unaware of either the circumstances resulting in the alleged deprivation or the likelihood that the deprivation would occur. *See Farmer,* —— U.S. at ——, 114 S.Ct. at 1982 (permitting officials to avoid liability under the Eighth Amendment by proving they were unaware of facts causing deprivation or believed that risk of deprivation was unlikely).

The defendants attempt to excuse the deprivation by explaining that logistical problems made it difficult to provide adequate exercise. According to the defendants, scheduling an inmate's time in the exercise yard was difficult because, for security reasons, inmates had to be accompanied to the recreation yard by a guard and only one inmate could use the recreation yard at a time. We recognize that the practical difficulties that arise in administering a prison facility from time to time might justify an occasional and brief deprivation of an inmate's opportunity to exercise outside. However, we cannot accept the defendants' vague reference to logistical problems as necessarily justifying, as a matter of law at the summary judgment stage, the deprivation that took place here. A rational fact-finder after hearing the evidence might determine that the defendants acted with at least deliberate indifference to Smith's basic human needs, as defined by *Spain,* by placing inconsequential logistical concerns that might be no more than matters of convenience above Smith's need for exercise. *See Harris v. Angelina County,* 31 F.3d 331, 335–36 (5th Cir.1994) (practical difficulties to mitigating prison overcrowding did not establish as a matter of law that prison officials had not acted with deliberate indifference when officials were aware of the conditions and had available alternative avenues to address the conditions).

Because Smith has alleged a violation of clearly established law, we affirm the district court's denial of defendants' motion for summary judgment on Smith's Eighth Amendment claim.

## IV

Defendants also maintain that they are entitled to summary judgment on the ground of qualified immunity on Smith's claims that they violated his right of access to the courts under *Bounds v. Smith,* 430 U.S. 817, 97

---

4. We note that each of the plaintiffs in *Spain* had been charged with or convicted of violent acts in prison, including shared responsibility in an incident that resulted in the murder of three prison officers and two inmates. *Spain,* 600 F.2d at 192.

5. Defendants also argue that *Spain* is inapplicable to cases involving neither a complete nor long-term denial of outdoor exercise. They note that the plaintiffs in *Spain* had been deprived completely of outdoor exercise for four years and as a matter of prison policy, whereas Smith's claim is that, for six weeks, he was permitted out of his cell only weekly. Although the length and severity of the alleged illegal conduct may be critical questions at trial, they are not dispositive at the summary judgment stage.

S.Ct. 1491, 52 L.Ed.2d 72 (1977). Smith claims that prison officials denied him access by refusing to photocopy his court papers despite his willingness to pay and by providing only a pencil, rather than a pen.[6]

Both of Smith's right of access claims arise from his difficulties in filing papers in the state court in connection with his second attempt to obtain post-conviction relief. Smith's first petition for post-conviction relief had been denied. Proceeding *pro se*, Smith attempted to file a second petition for post-conviction relief. The court returned the petition because Smith did not submit two additional copies. Smith claims that this failure was due to the defendants' refusal to make photocopies for him at a later time. Smith was able to refile the petition pursuant to Hawaii Rules of Penal Procedure, Rule 40, which provides that a petition for post-conviction relief may be filed at any time after judgment. The state trial court ultimately dismissed the petition as meritless.

Smith attempted to appeal the dismissal. However, because his notice of appeal was completed in pencil rather than in "black ink" as required by Rule 3 of the Circuit Court Rules, the court returned it to Smith for correction. Smith did not refile the notice of appeal until the time period for doing so had expired, and the Hawaii Supreme Court ultimately dismissed the appeal because of Smith's failure to file a timely notice of appeal. Smith claims that HHSF's ban on pens caused his failure to use black ink on his first timely presented notice of appeal.

### A

At the time defendants allegedly deprived Smith of the use of a pen and access to photocopying, the Supreme Court had clearly established an inmate's right of access to the courts, including a right to services and supplies indispensable to filing court documents. *See Bounds*, 430 U.S. 817, 97 S.Ct. 1491; *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Although this court had not yet held that "some means of accurate duplication" is an essential component of an inmate's right of access to the courts, *see Gluth v. Kangas*, 951 F.2d 1504, 1508–10 (9th Cir.1991), other circuits had. *See, e.g., Jones v. Franzen*, 697 F.2d 801 (7th Cir.1983) (inmate states valid claim against prison officials if he shows that prison's photocopy policy impeded court access); *Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir. 1981) (denial of photocopies unconstitutional to extent it actually infringed inmate's right of access to courts).[7]

Moreover, it does not require sophisticated "legal scholarship" to know that a plaintiff's access the courts could be hindered seriously by an inability to make multiple, accurate copies of legal documents. *See Ward v. County of San Diego*, 791 F.2d 1329, 1332 (9th Cir.1986) (public officials not charged with "the kind of legal scholarship normally associated with law professors and academicians," but with the knowledge of a reasonable person), *cert. denied*, 483 U.S. 1020, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987).

Similarly, the defendants should have known that they had a duty to provide Smith with a pen for preparing court documents. The Supreme Court had recognized prison officials' "indisputable" duty to provide inmates access to "paper and pen to draft legal documents." *Bounds*, 430 U.S. at 824, 97 S.Ct. at 1496. Although the defendants emphasize that their ban on the use of pens was

---

**6.** To the extent that Smith's claims rested on allegations that prison officials denied him *free* photocopies, the magistrate recommended that the defendants' motion for summary judgment be granted on this claim. In respect to the pen claim, during some of the time Smith was housed in SHU, the facility had a policy forbidding the use of pens by inmates except from 8:00 a.m. to 4:00 p.m. on weekdays. The magistrate determined that forty hours per week of pen use was sufficient to fulfill Smith's right of access to the courts and recommended that the district court grant the defendants' motion for summary judgment to the extent that Smith's claims rested

on this policy. Smith did not object to these recommendations and does not appeal the district court's order adopting them.

**7.** In the absence of preexisting binding precedent within this circuit, this court "look[s] at all available decisional law including decisions ... of other circuits" to determine whether a plaintiff has shown that the illegality of a defendant's conduct should have been apparent when it occurred. *Tribble v. Gardner*, 860 F.2d 321, 324 (9th Cir.1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).

necessary to fulfill legitimate penological. interests,[8] *Bounds* makes clear that an inmate's right of access to the courts is "fundamental" and places upon prison officials an "affirmative obligation[ ] to assure all prisoners meaningful access to the courts." 430 U.S. at 828, 824, 97 S.Ct. at 1498, 1496. Although the state may "choose among the avenues of access," the avenue it chooses must "satisfy its constitutional obligation" under *Bounds*. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir.1981).

Hawaii's Circuit Court Rule 3(a) requires that all "handwritten entries on papers shall be in black ink," and defendants concede that this mandate was "clear and explicit" and provided no exceptions. In light of the clarity of the pre-existing law, it should have been apparent to the defendants that a ban on the use of pens would seriously hamper an inmate's access to the courts and therefore constitute a violation of his rights under *Bounds*.[9]

Apparently, defendants initially thought Smith had refused the assistance of the Public Defender's office. However, they essentially concede on appeal that Smith sought assistance but that the office declined to represent him. Thus any reliance defendants. seek to place on *Storseth*, which held that a prisoner had not been denied access if he had rejected counsel, is misplaced. Absent evidence that Smith voluntarily and knowingly waived the assistance of counsel, the defendants are not excused from providing Smith the tools required to have meaningful access to the courts as a *pro se* litigant.

## B

Defendants also urge that they are entitled to summary judgment on the ground of qualified immunity because Smith has failed to make an adequate showing that the denial of photocopying services and the use of a pen actually prejudiced his right of access to the courts. A prisoner asserting a "non-core" violation of *Bounds* must allege an "actual injury" resulting from denial of his right to court access. *Vandelft v. Moses*, 31 F.3d 794, 796 (9th Cir.1994); *Sands v. Lewis*, 886 F.2d 1166, 1171 (9th Cir.1989). Because Smith does not challenge the adequacy of a law library or alternative sources of legal knowledge, he must identify "some specific instance in which [he] was actually denied access to the courts." *Id.* (quotations and citations omitted).

As an initial matter, we must decide whether this issue is properly before us in an interlocutory appeal from the denial of the defendants' claim of qualified immunity. A defendant cannot inject into an interlocutory appeal issues that are otherwise not immediately appealable. *See Abney v. United States*, 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2041–42, 52 L.Ed.2d 651 (1977) ("such claims are appealable if, and only if, they too fall within *Cohen*'s collateral-order exception to the final-judgment rule").

"A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 132 [111 S.Ct. 1789, 1793, 114 L.Ed.2d 277] (1991). Thus, we must determine whether Smith has made an adequate showing of "actual injury" to court access as a necessary predicate to showing that the defendants violated a constitutional right.

---

**8.** They maintain that inmates have used pens as weapons, to conceal contraband, and to tattoo themselves. Pencils, on the other hand, cannot be used to tattoo or to conceal contraband, and guards can reduce their effectiveness as weapons by controlling their length.

**9.** Defendants argue that pens and photocopies were not necessary for Smith to have meaningful access to the courts, despite the fact that both the "black ink" and multiple copies requirements were explicit and provided no clear exceptions. Defendants would require Smith to move the trial court to exempt him from the requirement or seek a writ of mandamus from the Hawaii Supreme Court ordering the Court Documents Supervisor to file his notice of appeal. They argue that the state courts should be expected to be "solicitous of inmate litigation" and therefore willing to exempt an inmate from procedural rules that are difficult to meet in light of prison regulation. These arguments, however, seem to confirm that the complete denial of a pen and photocopies made it "very difficult or impossible" for Smith to exercise his right to court access. *See Johnson v. Parke*, 642 F.2d 377, 380 (10th Cir.1981).

Smith has identified two instances where the defendants' denial of photocopying services and the use of a pen resulted in the denial of his access to the courts. His right to court access was denied when the state court returned his second petition for post-conviction relief because he had not enclosed multiple copies. His right to court access was denied a second time when he attempted to appeal the district court's denial of the petition and the state court returned his notice of appeal unfiled because it was not completed in black ink. The court then dismissed the appeal as untimely.

The defendants argue that Smith's right to court access was not impaired by any deprivation of photocopying services because the state court eventually did consider his second petition for post-conviction relief.[10] We disagree. Smith was able to duplicate his petition and have it filed with the court, but not until *after* the state court refused to accept a single copy for filing. Once Smith submitted his petition to the court but filing was refused, he was injured.[11]

The defendants also argue that Smith's right to court access has not been impaired because his second petition for post-conviction relief and his appeal of its denial were meritless. Their argument misconstrues both the nature of the right protected by

*Bounds* and the "actual injury" requirement. Inmates have an established right to present their legal claims to the courts and to have them considered *by the courts*.

All that *Sands* requires is a showing that the plaintiff could not present a claim to the courts because of the state's failure to fulfill its constitutional obligations. A prisoner need not show, ex post, that he would have been successful on the merits had his claim been considered. To hold otherwise would permit prison officials to substitute their judgment for the courts' and to interfere with a prisoner's right to court access on the chance that the prisoner's claim would eventually be deemed frivolous.[12]

We agree with the district court that Smith's showing is adequate to defeat summary judgment: he has alleged conduct on the part of defendants that, if true, violates clearly established constitutional rights, defeating defendants' claims to qualified immunity.

V

Smith has alleged facts which, if true, would establish that the defendants violated clearly established law defining Smith's right to outdoor exercise and his right to access the courts. The district court's denial of

---

**10.** Smith was able to refile the petition because the Hawaii Rules of Penal Procedure do not impose a filing deadline on petitions for post-conviction relief. *See* Haw.R.Pen.Proc. 40.

**11.** Thus, this case differs from *Hudson v. Robinson*, 678 F.2d 462, 466 (3d Cir.1982), which we cited with approval in *Sands. See* 886 F.2d at 1170. In *Hudson*, the Third Circuit held that a plaintiff had not fulfilled the actual injury requirement when his only injury "was his being required on one occasion to wait ten days to have a document notarized. As a result, *he submitted the document later than he would have liked* but prior to the date it was due." 678 F.2d at 466 (emphasis added). Smith did not simply have to wait a few days to make photocopies and submit his petition to the court. He alleges that the defendants denied him access to photocopies altogether and that, as a result, the state court returned his petition, refusing to file it.

**12.** The defendants' reliance on *McDonald v. Smith*, 472 U.S. 479, 484, 105 S.Ct. 2787, 2790–91, 86 L.Ed.2d 384 (1985), is wholly misplaced. In *McDonald*, the Court repeated the well accepted principle that the First Amendment right to petition does not protect frivolous litigation. *Id.* at 484, 105 S.Ct. at 2790–91 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743, 103 S.Ct. 2161, 2170, 76 L.Ed.2d 277 (1983)). Although this principle would permit, for instance, a state court to dismiss frivolous claims and sanction the litigants who present them, it would not allow prison officials to deny inmates the opportunity to present their claims to the courts. Moreover, the fact that damages properly assessed in a cause of action arising when a prison official denies court access to pursue a meritless claim would be nominal does not foreclose the cause of action, because the claim's merit is for a court, not a prison official to determine.

1092

defendants' motion for summary judgment is affirmed.

AFFIRMED.