**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MITCHELL WAYNE THOMAS,

      Plaintiff-Appellant-
      Cross-Appellee,

v.

LARRY LESLIE, Reno County
Sheriff,

      Defendant-Appellee-
      Cross-Appellant.

Nos. 97-3346 & 97-3361
(D.C. No. 95-CV-3066-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT** *

---

Before **PORFILIO** , **KELLY** , and **HENRY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

these appeals.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The cases are therefore ordered submitted without oral argument.

This appeal (No. 97-3346) and cross appeal (No. 97-3361) are taken from decisions granting summary judgment to Sheriff Leslie in No. 97-3346 and to Mr. Thomas in No. 97-3361.  They arise from an action filed by Mr. Thomas pursuant to 42 U.S.C. § 1983, in which he claimed his constitutional rights were violated while he was incarcerated at the Reno County Detention Center (RCDC) from December of 1992 through May of 1994.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm in part and reverse in part.

Mr. Thomas raised three claims in his verified complaint.  See Thomas App. at 1-6.  Judgment on the first claim, alleged denial of access to the courts, has not been appealed, nor has the denial of declaratory and injunctive relief.  For his second claim, Mr. Thomas alleged that the absolute ban on newspapers at the jail violated his First Amendment rights.  In his third claim, Mr. Thomas contended that he was denied an hour of exercise per day outside his cell in violation of his Eighth and Fourteenth Amendment rights.  Mr. Thomas sought $15,000 in compensatory damages.  See id. at 5.  The parties filed cross motions

for summary judgment with supporting documentation and affidavits. Sheriff Leslie also filed a <u>Martinez</u> [1] report and a supplemental report.

## Background

Mr. Thomas was incarcerated at the RCDC, after being extradited from a facility in Texas, pending disposition of state charges against him in Kansas. During his stay at the RCDC, he was briefly transferred on several occasions to a mental health center, the state hospital, and the county jail. Following his conviction in Kansas, he was transferred back to Texas.

## No. 97-3346

In his complaint, Mr. Thomas claimed the failure to provide him with "one hour of recreation outside [his] cell per day violated his constitutional rights under the 8th & 14th Amendments." Thomas App. at 4. In subsequent pleadings, he alleged that because he was under a doctor's care for stomach pains and depression, "[i]t may certainly be argued that the lack of exercise contributed greatly to [plaintiff's] medical problems . . . ." R. Doc. 24, Plaintiff's Response to Defendant's Motion for Summary Judgment, at 13.

---

[1]　See <u>Martinez v. Aaron</u>, 570 F.2d 317, 319-20 (10th Cir. 1978) (per curiam) (approving district court's use of report filed by prison officials as administrative record).

In his initial Memorandum and Order, the district court found that there were sometimes delays of over a week between inmate visits to the exercise area in the basement of RCDC, see Thomas App. at 48, that Mr. Thomas had access to the day room [2] adjoining his cell for at least seventeen hours daily and was permitted to exercise there, and that RCDC intended to provide each inmate with an opportunity for out-of-cell exercise at least weekly, but was not always able to achieve the goal. See id. at 49. The court further found that Mr. Thomas filed a grievance with Sheriff Leslie, who admitted telling Mr. Thomas that the exercise area was not available on a daily basis. See id. at 48.

The court held that under Wilson v. Seiter, 501 U.S. 294, 298-303 (1991), the Supreme Court noted that an Eighth Amendment claim has two components--a subjective component (did jail officials act with a sufficiently culpable state of mind, i.e., deliberate indifference?) and an objective one (was the deprivation serious?). See Thomas App. at 62; see also Farmer v. Brennan, 511 U.S. 825, 834 (1994) ("In prison-conditions cases that [sufficiently culpable] state of mind is one of 'deliberate indifference' to inmate health or safety") (further citations omitted). The court ruled that because the right to a minimal amount of out-of-cell exercise was clearly established at the time of Mr. Thomas's

---

[2]   Apparently the day rooms were used for multiple activities, including eating, watching television, and showering.

incarceration, the subjective component requiring deliberate indifference had been satisfied. See id. at 62-63. We assume that the district court recognized that the subjective component of deliberate indifference would be satisfied by a showing that Sheriff Leslie was aware of an exercise requirement, given the policy, and knowingly failed to implement it. See Allen v. Sakai, 48 F.3d 1082, 1088 (9th Cir. 1994). "[T]his is not a case where defendants claim that they were unaware of either the circumstances resulting in the alleged deprivation or the likelihood that the deprivation would occur." Id.

As to the objective component, the court noted this court's decision in Housley v. Dodson, 41 F.3d 597, 599 (10th Cir. 1994), as recognizing that the "failure to provide inmates confined for more than a short period of time with the opportunity for at least five hours a week of exercise outside the cell raises serious constitutional questions." See Thomas App. at 63.

Because of the parties' disputes as to the real conditions at the jail (e.g., crowded day rooms, Thomas's length of confinement, unsanitary nature of day room as an exercise area), and any damages Mr. Thomas may have incurred to his physical or mental health, the court found that issues of fact existed as to the conditions of Mr. Thomas's confinement with regard to adequate opportunity for exercise. The court then ordered a supplemental Martinez report, directing Sheriff Leslie to include Mr. Thomas's medical records and to "fully

address the factors announced in Housley which a district court is to consider when evaluating a claim that a prisoner was denied an adequate opportunity for out-of-cell exercise." See id. at 65-66.

Sheriff Leslie filed a supplemental Martinez report, which included an affidavit of the captain of the RCDC, Mr. Thomas's medical records, some of the records (gym logs) of those inmates who had signed up to attend the exercise area, a description of the exercise area and its equipment, a description of the jail (cell and day room facilities), the inmate rule book, information on the average stay of inmates at the RCDC, a gym request slip indicating Mr. Thomas's refusal to attend an exercise session, and other miscellaneous documents. See R. Doc. 44 and Thomas App. at 67-106. Mr. Thomas filed a lengthy and detailed response specifically disputing both factual statements and conclusions presented in the Supplemental Martinez report. See Thomas App. at 107-139.

In his second Memorandum and Order, the district court found that the RCDC inmates were given the opportunity for out-of-cell exercise once a week, that the goal was to provide each inmate with an hour of exercise a week, but that the sessions usually lasted only twenty to forty minutes, that the sessions were frequently canceled, and that for approximately six months toward the end of Mr. Thomas's incarceration no opportunity for out-of-cell exercise was provided because of an escape from the exercise room. See id. at 141.

The court further found that an inmate wishing to participate in attending the exercise area was required to submit a request form before 7:00 a.m. on the day scheduled for exercise and that Mr. Thomas had submitted only one such request to participate in the exercise sessions (and had refused to go when the time came). The court determined that Mr. Thomas admitted "he did not take advantage of the out-of-cell opportunities that were made available to him." See id. at 141-142. The court also ruled that the exercise sessions lasted at least twenty minutes, and that Mr. Thomas "certainly could have received some benefit from participating on a weekly basis." See id. at 142. In granting summary judgment to Sheriff Leslie, the court concluded that because Mr. Thomas had refused to participate in the exercise opportunities made available to him, Mr. Thomas could not "show that his mental or physical health deteriorated because [Sheriff] Leslie failed to provide additional opportunities for out-of-cell recreation." See id. at 143.

## Summary Judgment

We review the district court's grant of summary judgment *de novo*, applying the same legal standard used by the district court. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). "'When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quoting Wolf v. Prudential Ins. Co. of Am., 50 F.3d 793, 796 (10th Cir. 1995)). "[T]he relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Bingaman v. Kansas City Power & Light Co., 1 F.3d 976, 980 (10th Cir. 1993) (quotation omitted). "[F]acts must be identified by reference to affidavits . . . or specific exhibits incorporated therein." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998).

## Martinez Reports

We have long permitted use of a court-authorized [Martinez] report by prison officials as part of the determination as to "whether a pro se prisoner's allegations have any factual or legal basis." See Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992). "On summary judgment, a Martinez report is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence." Id. (further citation omitted). In addition, a plaintiff's complaint may be treated as an affidavit where, as here, it "alleges facts based on the plaintiff's personal knowledge and has been sworn

-8-

under penalty of perjury." Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). However, a court may not resolve material disputed issues of fact by accepting the Martinez report's factual findings when they are in conflict with pleadings or affidavits. See id. at 1109. "A bona fide factual dispute exists even when the plaintiff's factual allegations that conflict with the Martinez report are less specific or well-documented than those contained in the report." Id.

Here, the district court found that inmates were given the "opportunity to exercise out of their cells once a week." Thomas App. at 141. The Supplemental Martinez Report attached an affidavit of a captain at the RCDC stating that Mr. Thomas "was afforded the opportunity to exercise at least once a week in the Exercise Area between December 11, 1992 to December 3, 1993, if he filled out a Request Slip for that activity." Id. at 80. The district court also found, however, that exercise sessions usually lasted only twenty to forty minutes, and that the sessions were frequently canceled. See id. at 141.

On appeal, Mr. Thomas argues that material questions of fact exist with respect to his opportunity for adequate exercise outside of his cell. Mr. Thomas relies on our decision in Housley, 41 F.3d at 599 (10th Cir. 1994), for his claim that he was entitled to five hours a week of exercise out of his cell. [3] He contends

---

[3]    In Housley, 41 F.3d at 599 (10th Cir. 1994), we held that an inmate who claimed he received only thirty minutes of out-of-cell exercise in three months
                                                                    (continued...)

that Sheriff Leslie's Supplemental Martinez Report, see Thomas App. at 67, et seq., was also inadequate because the records supplied, i.e., the gym "logs," were incomplete. Specifically, Mr. Thomas claims that the gym logs, which list the names of inmates who had signed up for the exercise area, exclude the first seven months of Mr. Thomas's incarceration at RCDC and include a six-month period after he had returned to Texas. See id. at 84-106. From this "omission of records," he concludes that "the records themselves raise material issues of fact." Thomas Br. at 12. He argues that had the records been complete as ordered by the district court, "the court would have been fully aware of all the cancellations, and the court's ruling then should have been different and in favor of . . . Thomas."

---

[3](...continued)

had stated a claim that his constitutional rights were violated. We also held that "the right to some exercise was clearly established at the time of Mr. Housley's confinement," which appears to have been prior to 1993. See id. We relied in part on Bailey v. Schillinger, 828 F.2d 651, 653 (10th Cir, 1987), in which we had recognized that "some form of regular outdoor exercise is extremely important to the psychological and physical well being of inmates." We have recently affirmed the principles expressed in Housley and Bailey. See Perkins v. Kansas Dep't of Corrections, 165 F.3d 803, 810 (10th Cir. 1999); see also Williams v. Greifinger, 97 F.3d 699, 704-705 (2d Cir. 1996) (discussing prisoners' rights to some opportunity for exercise); Mitchell v. Rice, 954 F.2d 187, 191 (4th Cir. 1992) (generally prisoner "should be permitted some regular out-of-cell exercise"); Davenport v. DeRobertis, 844 F.2d 1310, 1315 (7th Cir. 1988) (recognizing number of decisions holding that failure to provide inmates confined for more than a short period with opportunity for at least five hours' weekly exercise outside cell raises serious constitutional questions). Although we have referenced five hours of exercise per week, we have declined to adopt a set weekly total for regular or daily exercise. See Housley, 41 F.3d at 599.

Id. at 13. He further explained that the gym logs attached to the supplemental Martinez report actually demonstrate that even inmates who did sign up for the exercise period were not necessarily afforded the opportunity because there was an insufficient amount of time available to accommodate all the inmates desiring to participate. He also points out the numerous cancellations of exercise periods and the total lack of exercise opportunity for six months between December of 1992 and June of 1994. See Thomas App. at 121-25, 80; 133-37. These material disputed issues of fact undercut the court's finding that Mr. Thomas was provided the opportunity for weekly exercise.

The district court erred in accepting the facts as set forth in the Martinez reports, where, as here, Mr. Thomas presented conflicting evidence. See Northington, 973 F.2d at 1521. See also Craig v. Eberly, 164 F.3d 490, 496 (10th Cir. 1998) (noting factual dispute where inmate alleged he was allowed only two one-hour exercise periods during total confinement and jailors claimed he received one hour per week, weather permitting). Thus, the court's conclusion that Mr. Thomas "could have received some benefit from participating [in the exercise period] on a weekly basis" (see Thomas App. at 142) is also flawed, because of the factual dispute as to how much exercise time was really afforded inmates at RCDC.

-11-

Accordingly, we vacate the district court's judgment as to the exercise claim and remand the matter for further proceedings.

## No. 97-3361

The district court also held that the absolute ban [4] on newspapers violated Mr. Thomas's First Amendment rights. The court granted summary judgment to Mr. Thomas on this claim, awarding nominal damages in the amount of $1.00.

The district court analyzed the RCDC rule forbidding newspapers under the balancing test set forth in Turner v. Safley, 482 U.S. 78, 89-90 (1987). We have described this analysis as follows:

> To determine whether the prison action is "reasonably related to legitimate penological interests," Turner erects a balancing test, and it directs lower courts to weigh the following factors. First, the lower court should inquire into whether there is a "valid, rational connection" between the prison action and the "legitimate government interest put forward to justify it." Second, the lower court should determine whether "there are alternative means of exercising the right that remain open to prison inmates." Third, the court should evaluate "the impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." And finally, the court should look for the presence of "obvious, easy alternatives" to the disputed prison activity. Of course, in conducting this analysis, the Supreme Court advises repeatedly that substantial deference is to be accorded to the prison authorities.

---

[4] There is no factual dispute that newspapers are not permitted at the RCDC. Thomas Appendix at 13.

-12-

Frazier v. Dubois, 922 F.2d 560, 562 (10th Cir. 1990) (internal citations and footnote omitted).

Sheriff Leslie argued that the ban on newspapers was rationally related to concerns that newspapers could be used to start fires [5] or as weapons and that the accumulation of papers constituted a health hazard. The sheriff admitted that inmates were permitted a soft-back Bible and that they "have access to puzzle books and paperback books via the commissary." Thomas App. at 13. As to the first Turner factor, the court determined that because other materials presenting the same security and safety concerns were not restricted, the newspaper ban was not rationally related to the sheriff's stated objective. [6] Id. at 57.

Sheriff Leslie also claimed that access to television, which included local and cable news channels, constituted an alternate means of exercising the right to remain informed about community and national news. He cites no authority for this proposition, nor did he dispute Mr. Thomas's claim (also repeated in an affidavit) that because a majority vote of the inmates in each cell governs what

---

[5] In his initial Martinez report, the sheriff acknowledged that RCDC "is smoke-free and matches and lighters were not permitted." Thomas App. at 15.

[6] No argument was advanced that the content of the newspapers posed a security risk. See Thornburgh v. Abbott, 490 U.S. 401 (1989) (upholding regulations allowing exclusion of certain publications found on individualized basis to be potentially detrimental to order and security).

programs are in fact watched, Mr. Thomas was not able to view the news programs he wanted to.

The court found that the alternative means test would allow Sheriff Leslie to prohibit all reading material under the theory that television provides an adequate substitute for all written communications and that this second <u>Turner</u> factor also weighed against upholding the rule. <u>See</u> <u>id.</u> at 58.

The court found that as to the third <u>Turner</u> factor, the impact of accommodating the right, any such impact of allowing newspapers would be minimal in view of the permitted access to paperback and puzzle books and soft back Bibles. <u>See</u> <u>id.</u>

Finally the court determined that an obvious and easy alternative existed to the sheriff's expressed concerns underlying the rule and was thus evidence that the rule was not reasonable but rather an "'exaggerated response' to prison concerns." <u>See</u> <u>Turner</u>, 482 U.S. at 90. The alternative identified by the district court was a policy approved for use at another county jail which required inmates to turn in one publication before receiving another, thus reducing the amount of combustible material in the jail. <u>See</u> Thomas App. at 58-59. Concluding that the blanket prohibition on newspapers violated Mr. Thomas's First Amendment rights, the court granted him summary judgment on this claim and awarded nominal damages of $1.00.

On appeal, Sheriff Leslie claims that the district court failed to properly balance the newspaper ban as a proper penological interest against Mr. Thomas's right to read newspapers. See Turner, 482 U.S. at 89 ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). The sheriff also contends that he is entitled to qualified immunity on this claim because the right to access newspapers was not clearly established.

**Qualified Immunity**

Once a defendant claims he is qualifiedly immune, the burden is on the plaintiff to establish both that defendant's actions violated a constitutional or statutory right and that the right allegedly violated was clearly established at the time of the conduct at issue. See Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir. 1995). In order to be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. at 1535 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). Generally, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Trigalet v. Young, 54 F.3d 645, 648 (10th Cir. 1995) (further quotation omitted). However, this test is not rigid, and a plaintiff is not

-15-

required to cite a factually identical case to demonstrate that the law was clearly established. See Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1257-58 n.9 (10th Cir. 1998), citing Clanton v. Cooper, 129 F.3d 1147, 1156 (10th Cir. 1997). Instead we have adopted the approach of "requiring some but not precise factual correspondence in demanding that officials apply general, well-developed legal principles . . . ." Clanton, 129 F.3d at 1157 (quoting Lawmaster v. Ward, 125 F.3d 1341, 1351 (10th Cir. 1997)). Accordingly, we must ascertain whether as of December of 1992 it was clearly established that a blanket prohibition of newspapers was unconstitutional. See Trigalet, 54 F.3d at 648.

### Right to Read Newspapers

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). See also Bell v. Wolfish, 441 U.S. 520, 545 (1979) ("our cases have held that sentenced prisoners enjoy freedom of speech and religion under the First and Fourteenth Amendments"); Kleindienst v. Mandel, 408 U.S. 753, 762 (1972) ("[T]he Constitution protects the rights to receive information and ideas.") (further citations omitted).

Although neither the Supreme Court nor this court have specifically held that a prisoner is entitled to read newspapers, other courts have addressed the

-16-

issue.  <u>See, e.g.</u> , <u>Van Cleave v. United States</u> , 854 F.2d 82, 84 (5th Cir. 1988) (plaintiff stated claim for relief where complaint alleged his request for newspaper denied);  <u>Green v. Ferrell</u> , 801 F.2d 765, 772 (5th Cir. 1986) (jail's prohibition on newspapers violates First Amendment);  <u>Mann v. Smith</u> , 796 F.2d 79, 82 (5th Cir. 1986) (ban on newspapers and magazines represents exaggerated response to legitimate need to preserve discipline and maintain security); <u>Sizemore v. Williford</u> , 829 F.2d 608, 610 (7th Cir. 1987) (absent restrictions based on legitimate goals of confinement, prison inmates retain First Amendment right to receive and read newspapers);  <u>Kincaid v. Rusk</u> , 670 F.2d 737, 744 (7th Cir. 1982) (total ban on newspapers unjustifiable when hazards of newspaper possession could as well be caused by reading material detainees were permitted to have).

A number of district courts have also recognized prisoners' rights to read newspapers.  <u>See, e.g.</u> , <u>Parnell v. Waldrep</u> , 511 F. Supp. 764, 767-68 (W.D.N.C. 1981) (refusal to allow jail inmates to receive newspapers is unconstitutional); <u>Hutchings v. Corum</u> , 501 F. Supp. 1276, 1299 (W.D. Mo. 1980) (absolute denial of access to newspapers violates inmates' First Amendment guarantees);  <u>Mitchell v. Untreiner</u> , 421 F. Supp. 886, 895 (N.D. Fla. 1976) (failure to permit inmates to read daily newspaper denied First Amendment freedom of speech, association, and right to be informed citizens in democratic society);  <u>Payne v. Whitmore</u> ,

325 F. Supp. 1191, 1993 (N.D. Cal. 1971) (that right to receive newspapers and magazines is part of First Amendment is beyond question).

We agree with the district court that the absolute ban on newspapers does not constitute a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forth to justify it," Turner, 482 U.S. at 89 (further quotation omitted), particularly where the hazards concerning Sheriff Leslie could as well be caused by the permitted reading materials. See Kincaid, 670 F.2d at 744; Mann, 796 F.2d at 82 (because jail has no smoking rule and inmates are permitted to have other forms of paper, official rationale for banning newspapers seems tenuous at best).

Nor are we persuaded by Sheriff Leslie's argument that access to television provides an adequate alternative to newspapers. Television cannot supply the depth and diversity of coverage that newspapers can provide. Mr. Barnett's affidavit states he was unable to watch news programs because of the majority vote rule controlling what programs were watched. Sheriff Leslie has not disputed this statement. Moreover,

> [i]t is not up to the [county sheriff] or this court to decide that television can adequately service the first amendment right to receive protected materials. Rather, we must apply the principle that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.

See Mann, 796 F.2d at 83 (footnote and citation omitted).

We therefore conclude that the contours of an inmate's right to access to newspapers was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." See Anderson , 483 U.S. at 640; cf. Housley , 41 F.3d at 600 ("[a] reasonable sheriff and jailer must remain apprized of major constitutional developments concerning inmates' rights."). The district court correctly held that Sheriff Leslie was not entitled to qualified immunity on this claim, and judgment as to this claim is affirmed.

Accordingly, in appeal No. 97-3346, the district court's judgment is REVERSED, and the matter is REMANDED for further proceedings. In appeal No. 97-3361, the district court's judgment is AFFIRMED. The mandates shall issue forthwith.

Entered for the Court


Robert H. Henry
Circuit Judge