Max LOPEZ, Jr., Plaintiff–Appellant,

v.

G.A. SMITH, Warden; Larry Loo, Chief Medical Officer; A. Acevedo, Chief Dental Officer; Patterson, Counselor 4A-2R; R. Keiner, Dentist; M.P. McClure, 4A-2R Appeals Coordinator, Defendants–Appellees.

No. 97–16987.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 21, 1999

Decided Feb. 10, 2000

Margo Schlanger, Harvard Law School, Cambridge, Massachusetts, for the plaintiff-appellant.

Constance Picciano, Deputy Attorney General, Sacramento, California, for the defendants-appellees.

Before: HUG, Chief Judge, and SNEED, PREGERSON, REINHARDT, TROTT, FERNANDEZ, RYMER, KLEINFELD, HAWKINS, TASHIMA, and WARDLAW, Circuit Judges.

Opinion by Judge MICHAEL DALY HAWKINS; Concurrence by Judge RYMER; Dissent by Judge SNEED.

MICHAEL DALY HAWKINS, Circuit Judge:

The Prison Litigation Reform Act of 1995 ("PLRA") provides that a district court "shall dismiss" an in forma pauperis complaint "if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." Pub.L. No. 104–134, § 804(a)(5), 110 Stat. 1321, 1321–74 (1996), codified at 28 U.S.C. § 1915(e)(2) (1996). We took this case en banc to decide whether that provision deprives a district court of its historical discretion to dismiss such a complaint *with* leave to amend and mandates instead that the dismissal be *without* leave to amend. Because the PLRA does not clearly state that dismissal must be without leave to amend, we hold that a district court retains its discretion over the terms of a dismissal for failure to state a claim, including whether to make the dismissal with or without leave to amend.

## I.

### BACKGROUND

On October 30, 1995, appellant Max Lopez, a prisoner at Corcoran State Prison, filed a section 1983 complaint in forma pauperis against defendants Warden G.A. Smith, Chief Medical Officer Dr. Larry Loo, Chief Dental Officer Acevedo, Dr. Tierney (whose name was misspelled as Keiner in the complaint), Counselor Patterson, and Appeals Coordinator McClure (whose title, but not name, was included in the complaint). Lopez alleged that the defendants (1) knowingly placed him in a cell with a dangerous inmate who subsequently injured him; (2) provided him inadequate medical care while he was recovering from his injury; (3) denied him outdoor exercise during his recovery; and (4) deliberately mistreated him during a bus transfer between prisons.[1]

Shortly after the complaint was filed, a magistrate judge reviewed Lopez's complaint and found that it stated colorable claims and should be served on the defendants. The magistrate judge also instructed Lopez to "amend his pleadings accordingly as soon as he is able to ascertain the defendant Appeal Coordinator's name." On April 2, 1996, Lopez filed a pleading titled "Amend Complaint," which stated that Lopez "request [sic] leave to file an amended complaint." The pleading then named McClure as the Appeals Coordinator and corrected the spelling of one other defendant's name. The pleading also stated that the original complaint had "named a John Doe as the transportation sgt. defendant" and explained that Lopez wanted to "have the John Doe or as mentioned in the Complaint as the transportation sgt. to be put on record."

The magistrate judge treated the pleading as an amended complaint rather than

---

1. Lopez made several other claims that are not at issue here.

as a request for leave to amend the complaint.[2] But because the pleading did not restate the allegations of the original complaint, the magistrate judge characterized it as "woefully incomplete" and stated that although "plaintiff asserts that he named a John Doe transportation sergeant as a defendant in his original complaint ... [t]his is simply not true. Plaintiff discusses this person, but never names him as a defendant." The magistrate judge also denied leave to amend the complaint further, noting that the court usually provides only one opportunity to amend and that Lopez had failed to make a showing of good cause for additional amendments.

On May 20, 1996, the defendants filed a motion to dismiss and for summary judgment, and Lopez filed a cross motion for summary judgment. On May 27, 1997, the magistrate judge recommended that defendants' motion be granted. The magistrate judge found that Lopez's first and fourth causes of action—that defendants knowingly placed him in a cell with a dangerous inmate and deliberately mistreated him during a prison transfer—did not state a claim on which relief could be granted because Lopez had failed to name as defendants the individuals who caused his alleged injury.[3] He therefore recommended that these claims be dismissed

without prejudice.[4] The magistrate judge then concluded that summary judgment should be entered in favor of defendants on the remaining claims. After reviewing Lopez's objections, the district court adopted the magistrate judge's findings and recommendations in full.

On appeal, Lopez argued that the district court erred in granting the motion to dismiss without giving him an opportunity to amend his complaint. A panel of this court rejected his argument. *See Lopez v. Smith*, 160 F.3d 567 (9th Cir.1998). Although the panel acknowledged that longstanding Ninth Circuit case law required a district court to provide a pro se claimant an opportunity to amend, it held that the PLRA had overruled this precedent. Raising the issue sua sponte, the panel concluded that the phrase "shall dismiss" required district courts to dismiss *without* leave to amend any in forma pauperis complaint that failed to state a claim for relief. The panel maintained that this reading of the statute was consistent with Congress's desire to "reduce docket pressure on federal courts caused by a burgeoning prisoner-litigant caseload." *Id.* at 570. It also noted that the Sixth Circuit had reached the same conclusion in *In Re Prison Litig. Reform Act*, 105 F.3d 1131, 1138 (6th Cir. 1997).[5]

---

2. We need not determine whether the pleading was in fact an amended complaint or was instead a request for leave to file an amended complaint. We will accept the magistrate judge's characterization for purposes of this appeal.

3. Lopez failed to name the members of the classification committee who assigned him to the cell and the bus driver who mistreated him. In his Dec. 9, 1996 cross motion for summary judgment, Lopez stated that he had not named these individuals because the defendants had withheld their names during discovery. The district court rejected this explanation, stating that it was Lopez's "responsibility (not the court or defendants) to name defendants and link them to the wrongs which he alleges they committed."

4. Both parties in this appeal assume that the district court granted summary judgment as to Lopez's claim regarding the prison trans-

fer. However, it appears that the court dismissed this claim for the same reason it dismissed Lopez's claim regarding placement in the cell—because he did not name as defendants the individuals responsible for his alleged injury. Accordingly, we review these two claims together.

5. As a preliminary matter, Lopez contends that the panel incorrectly applied the PLRA to his case because the provision in question should not be applied retroactively. Although this court has previously ruled to the contrary in *Marks v. Solcum*, 98 F.3d 494, 496 (9th Cir.1996) (per curiam), Lopez suggests in his brief that the reasoning in the Supreme Court's recent decision in *Martin v. Hadix*, 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999), is inconsistent with our earlier decision, and that we should therefore overrule *Marks*. However, because this issue was neither properly briefed by the parties nor argued at the en banc hearing, and because

The panel also affirmed the grant of summary judgment. It held that Lopez had presented no evidence that prison officials were deliberately indifferent to his medical needs. It also held that temporary denial of outdoor exercise with no adverse medical effects is not a substantial deprivation of rights in violation of the Eighth Amendment.

██ We vacated the panel's decision on April 12, 1999 and granted rehearing en banc. *See Lopez v. Smith,* 173 F.3d 749 (9th Cir.1999). We now reverse the district court's decision to dismiss without leave to amend. In doing so, we must address the panel's interpretation of the PLRA. Contrary to the suggestion in Judge Rymer's concurrence, we have jurisdiction to consider this issue even though the district court dismissed Lopez's claims pursuant to a 12(b)(6) motion, not the PLRA. This is because a district court's decision must be affirmed if it can be supported on any ground, even one not relied upon by the district court. *See United States v. $129,374 in United States Currency,* 769 F.2d 583, 586 (9th Cir.1985); *Salmeron v. United States,* 724 F.2d 1357, 1364 (9th Cir.1983). Thus, if the PLRA precludes leave to amend when an in forma pauperis complaint is dismissed for failure to state a claim, the district court's decision must be affirmed.[6] Of course, we conclude that the PLRA does not preclude leave to amend. But only by reaching that conclusion can we decline to affirm the district court's ruling.

We also reverse the grant of summary judgment as to both of Lopez's claims.

## II.

## DISCUSSION

### A. *Dismissal For Failure to State a Claim*

#### 1. *The PLRA*

██ The PLRA contains several provisions that require district courts to screen lawsuits filed by prisoners and to dismiss those suits sua sponte under certain circumstances. Among these provisions is section 804(a)(5), which is codified as part of the in forma pauperis statute at 28 U.S.C. § 1915(e)(2).[7] That section reads as follows:

(2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—

(A) the allegation of poverty is untrue; or

(B) the action or appeal—

(i) is frivolous or malicious;

(ii) fails to state a claim on which relief may be granted; or

(iii) seeks monetary relief against a defendant who is immune from such relief.

Section 1915(e) replaced former section 1915(d), which provided that a district court "may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (1994). The Supreme Court held in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), that section 1915(d) did not authorize district courts to dismiss, sua sponte, a complaint for failure to state a claim, and

its resolution is not necessary to our determination of the appeal, we decline to address it here.

**6.** It makes no difference that Lopez's complaint was dismissed pursuant to a noticed motion under Federal Rule of Criminal Procedure 12(b)(6). The PLRA provides that a district court "shall dismiss" an in forma pauperis complaint that fails to state a claim. So even if a 12(b)(6) motion is made, that does not relieve the district court of its duty to follow the PLRA.

**7.** The other provisions are codified at 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). While section 1915(e) applies to all in forma pauperis complaints, section 1915A applies only to actions in which a prisoner seeks redress from a governmental entity or employee. Section 1997e(c) applies to prisoner complaints specifically challenging prison conditions. All three of the provisions direct district courts to dismiss a complaint that fails to state a claim upon which relief may be granted.

it is clear that Congress intended that the PLRA overrule that decision. It is also clear that section 1915(e) not only permits but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim. *See Barren v. Harrington,* 152 F.3d 1193, 1194 (9th Cir.1998).

However, it is not clear that section 1915(e) precludes a district court from dismissing a complaint *with* leave to amend. The statutory language says only that a court "shall dismiss" a complaint. It does not say that such a dismissal must be without leave to amend. Indeed, one can only reach that conclusion by reading the phrase "shall dismiss" as "shall dismiss without leave to amend." But nothing in the statute requires us to read the language in a way that would deprive the district courts of their traditional discretion to grant leave to amend.

There is, however, substantial reason not to construe the statutory language in a manner that would eliminate that discretion. The language of section 1915(e)(2), as it applies to dismissals for failure to state a claim, "parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren,* 152 F.3d at 1194. And in a line of cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the

pleading could not possibly be cured by the allegation of other facts." *Doe v. United States,* 58 F.3d 494, 497 (9th Cir. 1995); *see also Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.,* 911 F.2d 242 (9th Cir.1990); *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir. 1990); *Noll v. Carlson,* 809 F.2d 1446 (9th Cir.1987); *Bonanno v. Thomas,* 309 F.2d 320 (9th Cir.1962); *Sidebotham v. Robison,* 216 F.2d 816 (9th Cir.1954).

This amendment policy is informed by Federal Rule of Civil Procedure 15(a), which provides that leave to amend should be freely granted "when justice so requires." Although Rule 15(a) gives the trial court discretion over this matter, we have repeatedly stressed that the court must remain guided by "the underlying purpose of Rule 15 ... to facilitate decision on the merits, rather than on the pleadings or technicalities." *Noll,* 809 F.2d at 1448. Congress, of course, is free to alter the underlying purpose of Rule 15 or to overrule our precedent. But we hesitate to presume Congress has done so by providing that courts "shall dismiss" in forma pauperis complaints that fail to state a claim, especially when Congress has used the words of Rule 12(b)(6). A clearer expression of congressional intent should be required before we discard 50 years of case law.

The Supreme Court has yet to consider the meaning of section 1915(e)(2).[8] But

---

8. The Supreme Court did address the meaning of former section 1915(d) in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), but that decision does not control the issue here. In *Neitzke,* the Court held that section 1915(d), which gave courts permission to dismiss sua sponte a frivolous complaint, did not also give courts authority to dismiss sua sponte a complaint for failure to state a claim. In reaching this result, the Court noted that under Rule 12(b)(6), a plaintiff ordinarily receives notice of a motion to dismiss and an opportunity to amend, while sua sponte dismissals under 1915(d) "involve no such procedural protections." The dissent reads this dicta to mean that leave to amend was forbidden under 1915(d) and that therefore leave to amend is forbidden under section 1915(e)(2). However, *Neitzke* did not

state that courts were barred from granting leave to amend under 1915(d), only that courts were not required to grant leave to amend. Even the dissent seems to acknowledge this distinction when it notes that "in *Neitzke,* the Supreme Court stated unequivocally that district courts *were not required* to provide leave to amend to prisoners's 'vexatious lawsuits' when proceeding IFP under the then existing § 1915(d)." Dissent at 1671 (emphasis added). Moreover, even if courts were barred from granting leave to amend when dismissing a complaint as frivolous under 1915(d), the same is not necessarily true for a dismissal for failure to state a claim under 1915(e)(2). When a case may be classified as frivolous or malicious, there is, by definition, no merit to the underlying action and so no reason to grant leave to amend.

several other circuits have issued opinions supporting our conclusion. In *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794 (2d Cir.1999), the Second Circuit held that the district court erred by not granting leave to amend when it dismissed a complaint under section 1915(e)(2)(B)(ii). The court acknowledged that the dismissal "language of § 1915 is mandatory." *Id.* at 796. Nevertheless, the court held:

> [A] pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

*Id.*

The Tenth Circuit has also held that a district court may grant leave to amend when dismissing a complaint under the PLRA. In *Perkins v. Kansas Department of Corrections*, 165 F.3d 803, 806 (10th Cir.1999), the court noted that the language of section 1915(e)(2) "parallels that of Federal Rule of Civil Procedure 12(b)(6)." It then stated that "[d]ismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile

There is, however, reason to allow amendment when a case fails to state a claim due to some technical defect, such as naming the wrong defendant. Thus, even if Congress intended to bar leave to amend under 1915(d)—which has not been established—we cannot say that Congress also intended to bar leave to amend under 1915(e)(2).

9. The defendants contend that the Eighth Circuit's decision in *Christiansen v. Clarke*, 147 F.3d 655, 658 (8th Cir.1998) supports the Sixth Circuit's reading. However, the *Christiansen* court held only that the PLRA *"allow[s]* district courts to dismiss all meritless claims before service of process and without giving leave to amend." *Id.* (emphasis added). It did not state that the PLRA requires a district court to dismiss without leave to amend. The Eleventh Circuit considered a dismissal under the PLRA in *Mitchell v. Far-*

to give him an opportunity to amend." *Id.* (citation omitted).

The Fifth and D.C. Circuits have considered dismissals under the PLRA's other screening provisions, which contain language similar to that of section 1915(e)(2). And although the courts upheld the dismissals because amendment would have been futile, both circuits assumed that the pre-PLRA policy of liberally granting amendments remained in force. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir.1998) ("Generally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend."); *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C.Cir.1998) ("[W]here a trial court has dismissed a claim sua sponte under Rule 12(b)(6) without affording plaintiff an opportunity to replead, a remand is appropriate unless the claimant cannot possibly win relief.").

Only the Sixth Circuit has expressly held that the PLRA precludes a district court from granting leave to amend when dismissing a complaint for failure to state a claim. *See Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir.1999); *McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997). Yet the court has provided little analysis to support its position. It has simply assumed that the language "shall dismiss" mandates that a dismissal be without leave to amend.[9]

*cass,* 112 F.3d 1483 (11th Cir.1997), but reversed the district court without discussing whether the PLRA allows leave to amend. The dissent relies on Judge Lay's concurring opinion in *Mitchell* to support its view that section 1915(e)(2) precludes a district court from granting leave to amend. *See* Dissent at 1673. But Judge Lay said only that the PLRA denies in forma pauperis prisoners the rights accorded under Rule 12(b)(6)—namely, the right to be notified of a pending motion to dismiss and an opportunity to amend the complaint before the motion is ruled upon. *See* 112 F.3d at 1492 (Lay, J., concurring). Judge Lay did not say that district courts are barred from granting leave to amend at their own discretion. And it is far different to say that a plaintiff does not have a right to amend than to say that a court does not retain the authority to grant leave to amend at its discretion.

Our conclusion is also supported by several practical considerations. First, although the PLRA was intended to cut down on the volume of prisoner lawsuits, *see Crawford–El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998), section 1915(e) applies to all in forma pauperis complaints, not just those filed by prisoners. Thus, an interpretation that 1915(e) precludes leave to amend would penalize all in forma pauperis plaintiffs for the alleged abuses of one group of plaintiffs. Congress has expressed no desire to curb in forma pauperis complaints across the board, and we decline to read the statute so expansively.[10]

Second, the defendants' reading of the statute would severely limit the legal remedies for indigent prisoners who seek to raise legitimate, meritorious claims. Under the PLRA, prisoners who have three complaints dismissed under section 1915(e)(2) are barred from filing additional in forma pauperis complaints unless they are "under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). As a result, a prisoner who is denied leave to amend could waste some or all of his three strikes attempting to cure technical defects in an otherwise meritorious complaint. Such a prisoner would be penalized not because his complaint is meritless, but because he is "unskilled in the law" and lacks counsel, a result that is directly contrary to the spirit of the federal pleading rules. *See Noll*, 809 F.2d at 1448.

The defendants make several arguments to support their reading of the statute. First, they argue that a dismissal with leave to amend is not really a dismissal at all and so circumvents the mandatory language of section 1915(e)(2). To support this claim, they cite *Jung v. K & D Mining Co.*, 356 U.S. 335, 78 S.Ct. 764, 2 L.Ed.2d 806 (1958), and *WMX Technologies, Inc., v.*

*Miller*, 104 F.3d 1133 (9th Cir.1997) (en banc), both of which held that a Rule 12(b)(6) dismissal with leave to amend is not a final judgment for purposes of appeal. However, *Jung* and *WMX* only addressed the effect of a dismissal with leave to amend on the appeal process. Neither case suggests that such a dismissal is not a real dismissal. In fact, both courts continued to refer to dismissals with leave to amend as "dismissals." We cannot say, therefore, that when Congress used the term "dismiss," it meant only a dismissal without leave to amend.

The defendants also argue that our reading of the statute will defeat Congress's intent to curb the flood of meritless prisoner lawsuits. Not so. Under Ninth Circuit case law, district courts are only required to grant leave to amend if a complaint can possibly be saved. Courts are not required to grant leave to amend if a complaint lacks merit entirely. Moreover, if a complaint truly lacks merit, granting leave to amend will not allow the complaint to proceed; the amended complaint will be rejected, and the case will be dismissed. But granting leave to amend will enable a plaintiff with a meritorious claim to cure any technical defects. Thus, our ruling not only respects Congress' intent to curb meritless lawsuits, but ensures that meritorious lawsuits are not swept away in the process.

Indeed, our reading of the statute would appear to be more consistent with Congress's intent than defendants' reading. As chief sponsor of the PLRA, Senate Judiciary Committee Chairman Orrin Hatch made the following statement: "I do not want to prevent inmates from raising legitimate claims. This legislation will not prevent those claims from being raised." 141 Cong. Rec. S146110–01, S14267 (daily

---

**10.** It is true that 1915(e)(2)'s provision for dismissal for failure to state a claim itself penalizes indigent non-prisoner plaintiffs for the alleged abuses of prisoner plaintiffs. However, Congress inserted 1915(e)(2) into the in forma pauperis statute, and we must follow this clear statutory direction. Con-

gress has not, however, clearly stated that dismissal must be without leave to amend. And because such a reading would have harsh consequences on a group of plaintiffs—indigent non-prisoners—not even intended to be affected by the statute, we are especially reluctant to read the statute that way.

ed. Sept. 29, 1995). Yet under the defendants' reading, legitimate claims with curable defects would be dismissed without leave to amend, a result plainly contrary to Congress's stated intent. Moreover, the defendants' reading could undermine the goal of judicial economy by forcing prisoners with deficient but curable complaints to file new actions, rather than simply amending their initial complaints. Surely, Congress did not intend this result when it passed the PLRA.[11]

Finally, the defendants argue that our interpretation strips section 1915(e)(2)(B)(ii) of meaning because it gives the district courts no more authority to dismiss complaints that fail to state a claim than they already had under Rule 12(b)(6). This is not so. Section 1915(e)(2)(B)(ii), even under our reading, allows a district court to dismiss, sua sponte and prior to service of process, a complaint that fails to state a claim, a power courts did not have prior to enactment of the PLRA. *See Jackson v. Arizona,* 885 F.2d 639, 640 (9th Cir.1989). This is a significant expansion of power that will curb the flood of prisoner lawsuits, spare the government the expense of serving parties, and save defendants the trouble of answering meritless complaints. Thus, we do not have to conclude that leave to amend is forbidden in order to give the provision effect. It has quite enough effect without such a reading.

### 2. *Dismissal of Lopez's Complaint Without Leave to Amend*

■ Having concluded that the PLRA does not preclude district courts from granting leave to amend, we must decide whether the district court abused its discretion by dismissing Lopez's claims without granting him leave to amend.[12] *See*

*Yakama Indian Nation v. Washington Dep't of Revenue,* 176 F.3d 1241, 1246 (9th Cir.1999) (denial of leave to amend reviewed for abuse of discretion).

As noted above, Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires." The Supreme Court has stated that "this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). In addition, we have repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe,* 58 F.3d at 497.

In this case, the magistrate judge granted leave to amend once, but denied leave to amend further because Lopez had not shown good cause for additional amendments. The district court then dismissed two of Lopez's claims—that he was intentionally placed in a cell with a violent prisoner and was mistreated during a prison transfer—because Lopez had named the wrong defendants. However, neither the magistrate judge nor the district court found that the pleading could not be cured by the allegation of other facts. To the contrary, the magistrate judge acknowledged that Lopez could cure the deficiencies in his complaint by naming the correct defendants. The dismissal without leave to amend was therefore contrary to our longstanding rule that "[l]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Balistreri,* 901 F.2d at 701 (quoting *Breier v. Northern California*

---

11. The dissent argues that legislative history strongly suggests that the PLRA precludes leave to amend. To support this claim, the dissent points to Senator Dole's statement "that the dismissal provisions would *allow* federal courts to 'immediately dismiss a complaint if ... the complaint does not state a claim upon which relief may be granted.'" Dissent at 1677 (emphasis added). Of course,

Senator Dole's use of the word "allow" rather than "require" supports our reading of the PLRA, not the dissent's.

12. Lopez does not challenge the district court's ruling that two of his claims failed to state a claim for relief; he contends only that he should have been granted leave to amend.

*Bowling Proprietors' Ass'n,* 316 F.2d 787, 790 (9th Cir.1963)).

The district court's action was also inconsistent with our precedent because Lopez was a pro se plaintiff. We have noted frequently that the "rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant. Presumably unskilled in the law, the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel." *Noll,* 809 F.2d at 1448.[13]

Because the district court failed to grant Lopez leave to amend, we reverse the dismissal and remand to the district court with instructions that Lopez be given an opportunity to amend his complaint.

### B. *Summary Judgment*

We review de novo a grant of summary judgment and must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Balint v. Carson City,* 180 F.3d 1047, 1050 (9th Cir.1999).

### 1. *Inadequate Medical Care*

■ On October 28, 1994, Lopez suffered a broken jaw while in his cell with another inmate. He was taken to the San Joaquin Community Hospital, where he underwent surgery, and was then returned to Corcoran under the care of the prison's medical staff. Because his mouth was wired shut, hospital doctors ordered that Lopez receive a clear liquid diet of 2500 to 3000 calories daily and that he drink through a straw. They also ordered that he return to the hospital's clinic for follow-up care each week for three or four weeks.

Lopez alleges that prison officials failed to follow these instructions. He claims he was not seen again by a medical doctor

until December 12, 1994. He also claims that instead of a liquid diet, he was given a "blended diet" consisting of partially pureed food, which could not be sucked through a straw. As a result, Lopez claims, he lost 22 pounds. He also contends that the healing of his jaw was slowed by the lack of proper nutrition.

■ The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration. *See Hutchinson v. United States,* 838 F.2d 390, 394 (9th Cir.1988) (citing *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). "But not every breach of that duty is of constitutional proportions. In order to violate the Eighth Amendment proscription against cruel and unusual punishment, there must be a 'deliberate indifference to serious medical needs of prisoners.'" *Id.* (quoting *Estelle,* 429 U.S. at 104, 97 S.Ct. 285). Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "deny, delay, or intentionally interfere with medical treatment.... Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Id.* (citation omitted).

As an initial matter, it is clear that Lopez's medical needs were serious. Examples of serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992). Lopez's jaw was broken, and his mouth was wired shut for several months. This condition not only affected his daily activities and ability to eat, but was the kind of injury a

---

**13.** We need not decide whether a district court is also required to inform a pro se plaintiff of the complaint's deficiencies because in this case the magistrate judge in-

formed Lopez of the defects. Having done so, however, the magistrate judge then denied Lopez leave to amend.

doctor would find noteworthy. It was likely painful as well.

The next question is whether prison officials were deliberately indifferent to this serious medical need. The district court found that no material issue of fact existed as to this question. It noted that although Lopez was not returned to the hospital for treatment, his medical records indicated that he was seen at the prison clinic each week. The court also noted that Lopez was given pain medication for over a month after his surgery. And as for his claim of inadequate nutrition, the court pointed out that, according to medical records, Lopez lost only nine pounds during the seven weeks after his surgery. The court acknowledged that there was some dispute about the type of diet Lopez required, but given that Lopez lost only nine pounds, the court determined he had received an appropriate diet.

■ We disagree with the district court's conclusion. A prisoner need not prove that he was completely denied medical care. See Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.1989). Rather, he can establish deliberate indifference by showing that officials intentionally interfered with his medical treatment. See Estelle, 429 U.S. at 105, 97 S.Ct. 285. Lopez's medical records show that when he returned to Corcoran, a doctor at the prison confirmed the hospital's instructions that he receive a liquid diet through a straw. Yet in his affidavit, Lopez states that he received a blended diet, consisting of pureed food that he was unable to drink through a straw. Lopez also stated that he complained to prison officials, but that they declined to change his diet. These allegations, viewed in the light most favorable to Lopez, are sufficient to support a finding that prison officials intentionally interfered with his previously prescribed medical treatment.

We approved of an Eighth Amendment claim on similar grounds in Tolbert v. Ey-

man, 434 F.2d 625 (9th Cir.1970). In Tolbert, a prisoner alleged that medication prescribed by prison physicians was intercepted by prison authorities. The government argued that this was a negligence claim not covered by the Eighth Amendment. But we explained that the "gravamen of his claim is not that he was erroneously diagnosed by the prison doctor, but that the warden refused to allow him authorized medicine that he needed to prevent serious harm to his health." Id. at 626. Although Tolbert was decided before the Supreme Court established the deliberate indifference standard, the Estelle court cited Tolbert as an example of a case where a claim of interference with medical treatment could amount to deliberate indifference. See Estelle, 429 U.S. at 105 n. 12, 97 S.Ct. 285.

■ Finally, we conclude that Lopez presented sufficient evidence to support a finding that he was harmed by the prison officials' acts. See McGuckin, 974 F.2d at 1060. Although medical records show that Lopez lost nine pounds, he stated in an affidavit that he lost 22 pounds. In addition, Lopez stated in his verified complaint that a doctor told him his healing had been slowed by the lack of proper nutrition.[14] This evidence, viewed in the light most favorable to Lopez, is enough to create a factual dispute as to whether he was harmed.

Accordingly, the grant of summary judgment is reversed.

### 2. Denial of Outdoor Exercise

Lopez claims that during the six-and-one-half weeks following his injury, he was denied all access to outdoor exercise and that this violated his right to be free from cruel and unusual punishment under the Eighth Amendment.

■ "An Eighth Amendment claim that a prison official has deprived inmates of humane conditions must meet two requirements, one objective and one subjec-

---

**14.** A plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence. See McElyea v. Babbitt, 833 F.2d 196, 197 (9th Cir.1987).

tive." *Allen v. Sakai,* 48 F.3d 1082, 1087 (9th Cir.1995). "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measure of life's necessities. The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference." *Id.* (citations omitted).

The district court concluded that Lopez had failed to meet both requirements. He failed to meet the objective requirement, the court ruled, because the deprivation of outdoor exercise "was not sufficiently serious to say that plaintiff was deprived of the minimal civilized measure of life's necessities." And he failed to meet the subjective requirement, according to the district court, because there was evidence indicating that prison officials denied Lopez outdoor exercise for his own protection.

▉▉ We disagree with both conclusions. In *Allen,* 48 F.3d at 1087–88, a prisoner alleged that during a six-week period he had been allowed only 45 minutes of outdoor exercise per week. The trial court denied defendant's motion for summary judgment, and we affirmed, holding that the prisoner "has met the objective requirement of the Eighth Amendment analysis by alleging the deprivation of what this court has defined as a basic human need." *Id.* at 1088. Lopez alleges a greater deprivation than was involved in *Allen,* and the defendants have presented no evidence to dispute his claim. Therefore, Lopez has met the Eighth Amendment's objective requirement.[15]

▉▉ We also conclude that Lopez has met the subjective requirement. To support its finding that no issue of material fact existed as to whether defendants were deliberately indifferent, the district court noted that "there is a chrono placing plaintiff on single-cell status, due to his medical condition (fractured jaw, wired shut), which appears to indicate that plaintiff was better protected in being held in the SHU and denied yard until his transfer than to be on the yard and in the general population." Read generously, this prison record may support defendants' assertion that they denied Lopez access to the exercise yard for his own protection. But it is hardly sufficient by itself to support a grant of summary judgment. Furthermore, even if this was proof that Lopez was denied yard access for his own protection, it does not explain why Lopez was not given some other opportunity for outdoor exercise. Lopez stated in his affidavit that he complained about the lack of exercise to his correctional counselor, but that nothing changed. Viewing the evidence in the light most favorable to the plaintiff, as we must, there is a genuine issue of fact as to whether defendants were deliberately indifferent to Lopez's need for outdoor exercise. Accordingly, the grant of summary judgment is reversed.[16]

REVERSED and REMANDED.

RYMER, Circuit Judge, joined by FERNANDEZ and KLEINFELD, Circuit Judges, concurring:

I part company because Lopez's due process claim was *not* dismissed *sua*

---

**15.** The panel in *Lopez v. Smith,* 160 F.3d 567 (1998), affirmed the summary judgment grant by citing *May v. Baldwin,* 109 F.3d 557, 565 (1997), which held that "a temporary denial of outdoor exercise with no medical effects is not a substantial deprivation." However, the *May* plaintiff alleged only a 22–day denial of outdoor exercise, and the court contrasted this "temporary" denial with *Allen*'s "long-term" deprivation. The clear implication of *May* is that temporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless

of effects. Because Lopez alleged a deprivation longer than the one in *Allen,* it qualifies as long term. Thus, he was not required to show adverse medical effects.

**16.** In their brief to the panel in *Lopez v. Smith,* 160 F.3d 567 (1998), defendants also argued that Lopez named the wrong defendants. However, defendants did not make this argument to the en banc panel, and therefore the issue is not properly before us. If the district court determines that Lopez did name the wrong defendants, it should give him an opportunity to amend the complaint.

*sponte* for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)—the Prison Litigation Reform Act section that both the majority and the dissent discuss—but was instead dismissed pursuant to a *noticed motion* under Federal Rule of Civil Procedure 12(b)(6). For this reason, Lopez lacks standing, and we lack jurisdiction to resolve the potentially thorny question under the PLRA of when § 1915(e)(2) is triggered and whether a dismissal under § 1915(e)(2) may be without leave to amend. Instead, this appeal presents the straightforward issue of whether Lopez should have been given leave to amend following dismissal of his due process claim "without prejudice" under Rule 12(b)(6). As the answer is probably "yes" under well settled law,[1] *see, e.g., Keniston v. Roberts,* 717 F.2d 1295, 1300 (9th Cir.1983); *Noll v. Carlson,* 809 F.2d 1446 (9th Cir.1987), I would simply remand, leaving the matter of *sua sponte* dismissals under § 1915(e)(2) for another day.

## I

Lopez filed his § 1983 complaint October 30, 1995 against six named prison officials. On December 14, 1995 the magistrate judge ordered the complaint served; service was effected on five of the six between January and March, but the sixth (identified as "R. Keiner") was misnamed so process was returned unexecuted. On April 1, 1996 Lopez filed a document entitled "Amend Complaint," in which he requested leave to file an amended complaint "changing and correcting the name of Dr. R. Keiner to Dr. R. Tierney." The magis-

trate judge rejected the request because the pleading was not "complete in itself" as required by the Local Rules. However, the judge did order the United States marshal to serve process on Tierney. On May 20, 1996 the defendants filed a Rule 12(b)(6) motion to dismiss or, in the alternative, summary judgment pursuant to Rule 56. On August 5 Lopez asked for, and was given, a stay to conduct discovery. He timely filed an opposition to the motions on February 25, 1997, and cross-moved for summary judgment. The magistrate judge issued a 19–page Report and Recommendation (R & R) May 27, 1997, which explained why Lopez's due process claim failed on a number of grounds, including that he had not named any individual defendants for the claim and had failed to connect the named defendants to it. The R & R recommended dismissal of this claim, and summary judgment on the remaining claims (inadequate medical treatment, denial of exercise, and mistreatment during transfer) under the Eighth Amendment. Lopez was given thirty days to file written objections; he requested, and received, an extension, ultimately filing objections July 28, 1997. On September 18, 1997 the district court adopted the magistrate judge's recommendations and ordered the complaint dismissed, without prejudice, as to Lopez's failure to protect claim and with prejudice as to an inmate 602 appeals process claim (not at issue on this appeal); granted the defendants' motion for summary judgment as to the remaining claims; and denied Lopez's cross-

---

1. There is an argument that there was no error, for Lopez had the opportunity to amend after being notified of the Rule 12(b)(6) motion, being given time for discovery, and being advised of the deficiencies in the claim by the magistrate judge's Recommendation and Report; or that the error, if any, was harmless. *See, e.g., Bazrowx v. Scott,* 136 F.3d 1053 (5th Cir.1998) (failure to give notice of intention to dismiss suit or opportunity to amend harmless because plaintiff did fail to state a claim and the dismissal was without prejudice). As the chronology set out in Part I shows, Lopez could have filed or sought leave to file an amended complaint at

any time before judgment because Smith had not yet answered. However, the magistrate judge had previously refused to accept an amended pleading proffered by Lopez because it was incomplete, and in doing so stated that after one opportunity to amend "[a]ny further amendment to the pleadings is only granted on a showing of good cause." This could be read to suggest that no further amendment could be made without cause. Since this is not correct, I would give Lopez one clean shot at stating a claim. *See* Fed. R.Civ.P. 15(a). Thus, I concur in the judgment.

motion for summary judgment. Judgment was entered September 22, 1997.

## II

From this history it is clear that § 1915(e)(2) played no part in dismissal of Lopez's due process claim. The parties, the magistrate judge, and the district court all understood this dismissal to be a Rule 12(b)(6) dismissal. As the majority points out, our decisions for years have held that in this setting the pro se litigant must be given notice of the deficiencies in his complaint and "an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment."[2] *Noll,* 809 F.2d at 1448. Because the deficiency in Lopez's complaint (failure to name any defendant connected to his placement with a dangerous inmate) seems curable, leave to amend should have been granted under long-standing principles.

However, I do not believe this appeal can, or should, be used to decide whether the same rule applies to dismissals under § 1915(e)(2). While § 1915(e)(2) now makes failure to state a claim a basis for *sua sponte* dismissals of a "case" brought pro se, in forma pauperis, § 1915(e)(2) was not invoked in this case and Lopez's claim was not dismissed *sua sponte* under § 1915(e)(2). *Cf., e.g., Gomez v. USAA Federal Savings Bank,* 171 F.3d 794 (2d Cir.1999) (reviewing judgment which dismissed pro se, in forma pauperis complaint *sua sponte* without prejudice pursuant to § 1915(e)(2) and holding that dismissal of the case for failure to state a claim would be improper without leave to amend); *Perkins v. Kansas Dept. of Corrections,* 165 F.3d 803 (10th Cir.1999) (reviewing *sua sponte* dismissal of action pursuant to 1915(e)(2)(B)(ii) before complaint was served and holding that district court prematurely dismissed certain of plaintiff's claims); *Anyanwutaku v. Moore,* 151 F.3d 1053 (D.C.Cir.1998) (reviewing *sua sponte*

dismissal of complaint deemed to have been under § 1915(e) and holding that allegations were sufficient to proceed beyond the *sua sponte* dismissal stage); *Christiansen v. Clarke,* 147 F.3d 655 (8th Cir.1998) (affirming *sua sponte* dismissal of complaint before service and without giving leave to amend pursuant to § 1915(e)(2)(B)(ii)); *Bazrowx v. Scott,* 136 F.3d 1053 (5th Cir.1998) (reviewing *sua sponte* dismissal pursuant to § 1997e(c) for failure to state a claim and holding that district court did not err reversibly in dismissing suit without prejudice); *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir.1997) (distinguishing *sua sponte* dismissals under § 1915(e)(2)(B) from pre-PLRA law and holding that if a complaint falls within the requirements of § 1915(e)(2) when filed, district courts should *sua sponte* dismiss the complaint and they have no discretion in permitting a plaintiff to amend a complaint to avoid a *sua sponte* dismissal); *Mitchell v. Farcass,* 112 F.3d 1483 (11th Cir.1997) (reviewing *sua sponte* dismissal under § 1915(e)(2) before service and remanding because it did not appear beyond doubt that the plaintiff could prove no set of facts entitling him to relief). Consequently, the question of leave to amend following a *sua sponte* dismissal under § 1915(e)(2)(B) does not arise.

Among other things, this leaves me with no idea how the district court would have responded had it actually been acting *sua sponte* under § 1915(e)(2). Perhaps it would have done the same thing, but it is speculative to assume so. This is particularly so here, where the claim was dismissed in the wake of a motion to dismiss and the magistrate's previous order which notified Lopez that he had failed to name a defendant who was connected with placing him in a dangerous cell *and* of a stay for discovery that gave Lopez the chance to find out who was responsible for the placement.

---

**2.** The standard of review that we apply to dismissals made under Rule 12(b)(6) is equal-

ly clear: our review is de novo. *See Dumas v. Kipp,* 90 F.3d 386, 389 (9th Cir.1996).

Nor does anyone suggest that the district court somehow erred by dismissing Lopez's due process claim pursuant to Smith's Rule 12(b)(6) motion instead of under § 1915(e)(2). As a result, whatever opinion one may have about how district courts should treat § 1915(e)(2) dismissals strikes me as advisory.[3]

In sum, Lopez has suffered no harm on account of the PLRA since his case was not dismissed under § 1915(e)(2). If he has not been injured by § 1915(e)(2), he has no standing to challenge how dismissals under that provision are made. Where a party lacks standing, this court lacks power under Article III. And this is true regardless of the resources devoted to the task or how helpful it would be to decide the issue sooner rather than later. Because I do not believe that the issue of leave to amend following § 1915(e)(2) dismissals is before us, I cannot join either opinion.

SNEED, Circuit Judge, with whom TROTT, Circuit Judge, joins, Dissenting:[1]

The majority holds that the dismissal of a complaint for failure to state a claim under § 1915(e)(2) of the Prison Litigation Reform Act of 1995 (PLRA) may be with leave to amend. I disagree.

The majority of this panel appears to believe that the *sole* effect of § 1915(e)(2) is to allow a district court to dismiss, sua sponte and prior to service of process, an in forma pauperis (IFP) complaint that fails to state a claim. However, (1) the history of the notice and opportunity to amend rule; and (2) the legislative history of the PLRA strongly suggest that Congress intended to require that the district court dismiss an IFP prisoner-litigant's

complaint that fails to state a claim, immediately and without an opportunity to amend. This substantial change would curtail prisoner lawsuits and relieve the burden of these lawsuits on the courts. The majority's interpretation, on the other hand, creates a significant expansion of work for the courts which is contrary to the stated intent of Congress.

My dissent will first address the history of the notice and opportunity to amend rule prior to the enactment § 1915(e)(2); thereafter the legislative history of § 1915(e)(2); and finally the constitutionality and retroactivity of § 1915(e)(2) as properly interpreted.

## I.

### HISTORY OF THE NOTICE AND OPPORTUNITY TO AMEND RULE

Prior to the PLRA, a district court was required to notify a pro se litigant of the deficiencies in his complaint and provide him an opportunity to amend the complaint unless it was "absolutely clear" that the litigant could not "amend his complaint to allege constitutional violations." *Noll v. Carlson,* 809 F.2d 1446, 1448–49 (9th Cir. 1987); *see Franklin v. Murphy,* 745 F.2d 1221, 1226–27 (9th Cir.1984); *Armstrong v. Rushing,* 352 F.2d 836, 837 (9th Cir.1965). This rule was accompanied by other requirements set forth in *Armstrong,* 352 F.2d at 837.

### A. *Armstrong v. Rushing*

In total, there were five *Armstrong* requirements designed to protect the pro se litigant from dismissal of his complaint:

---

**3.** Of course, § 1915(e)(2) applies to appeals as well, but this does not rescue the opinions in this case. Here, we are reviewing a judgment that dismissed a claim pursuant to Rule 12(b)(6); we are not relying on § 1915(e)(2) to dismiss the appeal based on our own *sua sponte* determination that Lopez's complaint fails to state a claim. Cf. *Marks v. Solcum,* 98 F.3d 494 (9th Cir.1996) (*sua sponte* determining that prisoner's complaint fails to state a

claim, and dismissing appeal pursuant to § 1915(e)(2)).

**1.** This case was taken en banc primarily to determine the proper interpretation of § 1915(e)(2). Therefore, while I disagree with the majority's resolution of the summary judgment issues in this case my dissent will only address the majority's interpretation of § 1915(e)(2).

(1) process issued and served, (2) notice of any motion thereafter made by defendant or the court to dismiss the complaint and the grounds therefor, (3) an opportunity to at least submit a written memorandum in opposition to such motion, (4) in the event of dismissal, a statement of the grounds therefor, and (5) an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment.

352 F.2d at 837. We found these protections necessary because "the pro se litigant is far more prone to making errors in pleading than the person who benefits from counsel" and needs assistance in navigating through the process. *See Noll,* 809 F.2d at 1448.[2] The primary beneficiaries of the *Armstrong* protections were pro se litigants proceeding in forma pauperis (IFP).

### B. *Franklin v. Murphy*

The *Armstrong* requirements were not without exceptions. In *Franklin,* we considered whether a district court, pursuant to § 1915(d), "may dismiss a frivolous IFP action sua sponte before service of process on the defendants." 745 F.2d at 1225–26. We responded affirmatively. We recognized that there was a fundamental difference between a litigant proceeding after paying the filing fee and one proceeding IFP:

> [W]here the plaintiff is proceeding in forma pauperis, the impact of additional factors must be considered. Most importantly, IFP plaintiffs are immune from the economic deterrents to filing frivolous lawsuits, such as assignment of costs of suit and tort liability for abuse of process. In forma pauperis actions also involve more of the court's own resources. *Id.* at 1226.

Thus, in *Franklin,* we carved out a specific exception to the *Armstrong* require-

ments: Where a pro se prisoner proceeds IFP, a district court may dismiss that litigant's complaint, without service of process and without an opportunity to amend, if the court concludes that the action is frivolous. We also concluded in *Franklin* that complaints whose only defect was failure to state a claim could be characterized as "frivolous" and dismissed under § 1915(d). *See Franklin,* 745 F.2d at 1228. Thus, after *Franklin,* a complaint that failed to state a claim could be immediately dismissed, even if not properly frivolous, under § 1915(d) prior to service of process and without an opportunity to amend.

The *Franklin* opinion failed to recognize that many complaints that failed to state a claim could not properly be characterized as "frivolous." *See Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Nevertheless, it was correct in recognizing that proper dismissals under § 1915(d), which consisted of complaints that were frivolous, malicious, or sought monetary relief against a defendant who is immune from such relief, did not come with procedural protections.

### C. *Noll v. Carlson*

In *Noll,* we continued to hold that a complaint whose only defect was failure to state a claim could be characterized as "frivolous" and dismissed, even if not properly frivolous, under § 1915(d). However, we limited the holding in *Franklin* by requiring that leave to amend be granted under § 1915(d) unless it was "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll,* 809 F.2d at 1448. Of course, if the deficiencies of the complaint can be cured by an amendment the complaint is not properly characterized as "frivolous." Therefore, the only complaints curable by amendment were those characterized as

---

**2.** The rule established in *Armstrong* applies specifically to *pro se litigants. See Noll,* 809 F.2d at 1448 ("The requirement that courts provide a pro se litigant with notice of the deficiencies in his or her complaint helps ensure that the pro se litigant can use the opportunity to amend effectively.").

"frivolous" yet whose only defect was failure to state a claim. However, it is illogical to characterize on the one hand a complaint as "frivolous" under § 1915(d) while on the other hand to say it can be cured by amendment.

Nevertheless, after *Noll*, complaints whose only defect was failure to state a claim (1) could be classified as "frivolous" and dismissed, even if not properly frivolous, under § 1915(d); and (2) would receive the benefits of the *Armstrong* protections.

### D. *Neitzke v. Williams*

Neither the *Franklin* nor the *Noll* opinion would survive the Supreme Court's decision in *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The Court's decision suggested that (1) *Noll* was incorrect in extending procedural protections to a complaint dismissed under § 1915(d); and (2) *Franklin* was incorrect in allowing complaints whose only defect was failure to state a claim to be characterized as "frivolous" and dismissed under § 1915(d).

In *Neitzke,* a pro se inmate brought an IFP civil rights suit against prison officials, alleging that those officials violated the Eighth Amendment by denying him medical treatment and his due process rights by transferring him to a cell which he found "undesirable." 490 U.S. at 320–21, 109 S.Ct. 1827. The district court dismissed the complaint as frivolous, sua sponte, without an opportunity to amend, pursuant to § 1915(d). The Supreme Court held that a complaint that failed to state a claim was not necessarily frivolous under § 1915(d). *See id.* Important to this case was how the Supreme Court crystallized the difference between procedures under Fed.R.Civ.P. 12(b)(6) and the old § 1915(d):

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled on. . . . By contrast, the

sua sponte dismissals permitted by, and frequently employed under, § 1915(d), necessary though they may sometimes be to shield defendants from vexatious lawsuits, *involve no such procedural protections.*

*Id.* at 329–30, 109 S.Ct. 1827 (emphasis added).

Thus, in *Neitzke,* the Supreme Court stated unequivocally that district courts were not required to provide leave to amend to prisoners's "vexatious lawsuits" when proceeding IFP under the then existing § 1915(d). 490 U.S. at 329–30, 109 S.Ct. 1827. The Court reasoned that the dismissal under 1915(d) of complaints without leave to amend whose only defect was a failure to state a claim was incorrect. Specifically, the Court said it would not "conflate the standards of frivolousness and failure to state a claim" by allowing dismissal of the latter under § 1915(d). *Id.* at 330, 109 S.Ct. 1827. To do so would "deny indigent plaintiffs the practical protections against unwarranted dismissal generally accorded under the Federal Rules." *Id.*

Thus, after *Neitzke,* an IFP prisoner complaint that failed to state a claim could not be dismissed under § 1915(d) and thus could not be dismissed without leave to amend.

### E. *Change made by the PLRA*

The majority correctly states that "it is clear that Congress intended that the PLRA overrule [*Neitzke* ]." Majority Opinion at 1648. Indeed, Congress did overrule *Neitzke* when it amended § 1915(d). It determined, in effect, to "conflate the standards of frivolousness and failure to state a claim." *Neitzke,* 490 U.S. at 330, 109 S.Ct. 1827. Whereas the Court in *Neitzke* declined to allow dismissal of complaints that failed to state a claim under the old § 1915(d), Congress amended the statute to provide not only that such complaints could be dismissed, but that they must be dismissed under § 1915. Section 1915(e)(2) now encompasses all sit-

uations in which a prisoner presents a complaint that "fails to state a claim," not simply those situations in which the district court is satisfied that an action is "frivolous or malicious." *See* § 1915(d) (1994).

Thus, Congress knew that no procedural protections were provided to litigants whose cases were dismissed properly under the pre-amendment § 1915(d). Congress did nothing to change that rule. It also knew that, in the absence of an amendment, a complaint under *Neitzke* that was not frivolous but failed to state a claim could not be dismissed under § 1915(d). To repeat, Congress, in § 1915(e)(2), intended that IFP prisoner complaints that failed to state a claim thereafter would be dismissed without the benefit of the procedural protections that had been historically extended. Further, the majority cites nothing in the text of the PLRA, and indeed there is nothing, that suggests that a district court must provide the pro se prisoner-litigant an opportunity to amend a faulty complaint prior to such mandatory dismissals.

Judge Lay of the Eleventh Circuit reached this precise conclusion in his concurring opinion in *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997) (Lay, J., concurring). Judge Lay started with a description of the law as it was prior to the passage of the PLRA:

> The difference between dismissal for frivolousness and dismissal for failure to state a claim was explained by the Supreme Court in *Neitzke*, which interpreted § 1915(d) of the old IFP statute. The *Neitzke* Court, as a matter of statutory interpretation, was critical of the district court in conflating the standards of frivolousness under the old § 1915(d) and failure to state a claim upon which relief could be granted. The Supreme Court observed that the error in doing so denied indigent plaintiffs the practical protections against unwarranted dis-

missal generally accorded ... under the Federal Rules.

*Id.* at 1491–92 (internal quotation marks omitted). According to Judge Lay, the PLRA, by means of § 1915(e)(2), *requires* the sua sponte dismissal of complaints filed by IFP litigants when the litigant fails to state a claim. *See id.* In other words, as Judge Lay elaborated, the new § 1915(e)(2) does not allow for an opportunity to amend where the IFP complaint fails to state a claim. *See id.* at 1491–92.[3]

The majority finds significant the distinction between a court being required to grant leave to amend and having discretion to grant leave to amend. *See* Majority Opinion at 1127 n. 8 and at 1128 n. 9. The majority distinguishes Judge Lay's concurrence by arguing that he only said that a plaintiff does not have a right to amend and not that a court lacks the power to grant leave to amend at its discretion. *See* Majority Opinion at 1128 n. 9. Thus, according to the majority the court may, but is not required to, grant leave to amend.

However, "may" will become "must." If a court "may" grant leave to amend it inescapably follows that this discretion must not be exercised abusively. In determining whether a court has abused its discretion rules of conduct must inevitably be made. Presumably, it would be an abuse of discretion for a district court to refuse to grant leave to amend "if it appears at all possible that the plaintiff can correct the defect." Majority Opinion at 1131 (internal quotations omitted). Therefore, if it appears *at all possible* that the plaintiff can correct the defect the district court *must* exercise its discretion and grant leave to amend. Therefore, even though a court "may," in reality it "must." This "mandatory discretion" is the same "absence of" discretion that courts had prior to the enactment of the PLRA. The

---

**3.** Judge Lay did express serious misgivings regarding the constitutionality of the statute. However, as discussed, infra, I believe the statute would survive rational basis scrutiny. *See Christiansen v. Clarke*, 147 F.3d 655 (8th Cir.), *cert. denied* —— U.S. ——, 119 S.Ct. 554, 142 L.Ed.2d 461 (1998).

majority concedes that Congress has made a change (i.e., from must to may grant leave to amend) but, to repeat, "may" is substantially "must" in the application of the PLRA. I do not think this interpretation properly reflects the intent of Congress.

The majority reasons that because Federal Rule of Civil Procedure 15(a) permits leave to amend, so too must § 1915(e)(2). Of course, Rule 15(a) states that leave to amend "shall be freely given when justice so requires." However, the Supreme Court has said that § 1915 provides no such procedural protection and nothing in the plain language of § 1915(e)(2) or its legislative history suggests that we should hold otherwise. *See Neitzke,* 490 U.S. at 330, 109 S.Ct. 1827. This position is entirely consistent with the language of the statute and supported by other circuits to consider the issue. *See Christiansen v. Clarke,* 147 F.3d 655 (8th Cir.), *cert. denied* — U.S. ——, 119 S.Ct. 554, 142 L.Ed.2d 461 (1998); *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir.1997). To read § 1915(e)(2) as the majority suggests strips from the statute the very purpose that Congress intended—to require district courts to eliminate, *as soon as possible,* prisoner complaints that fail to state a claim.[4]

## II.

### Legislative History of § 1915(e)(2)

Nothing in the legislative history of § 1915(e)(2) suggests that Congress intended to eliminate one of the five *Armstrong*[5] procedural requirements, namely, that service of process must be issued and served prior to any dismissal for failure to state a claim, while keeping all the others intact. The majority's interpretation initially removes the defendant from the case

and requires the courts to do much of the defendant's work. For example, the court must, at a minimum, give the plaintiff a statement of the grounds for dismissal, an opportunity to amend the complaint, and a statement of how such a complaint can be amended. Presumably, the statement of the grounds for dismissal would be without the aid of the defendant and the statement of how such complaint can be amended quite clearly will be without the aid of the plaintiff. Thus, the majority's interpretation distorts the principles of the adversary process and significantly burdens the court.

This hardly serves the purpose that Senator Dole stated was a reason for the enactment of the PLRA. He stated that "[f]rivolous lawsuits filed by prisoners tie up the courts, waste valuable judicial resources, and effect the quality of justice enjoyed by the law-abiding population." 141 Cong. Rec. S14408–01, *S14413 (statement of Senator Dole). Senator Hatch noted that "[a]lmost 100 percent of these claims are dismissed, but the judges have to go through all of them." 141 Cong. Rec. S146110–01, *S14626 (statement of Senator Hatch).

Thus, Congress was concerned with the burgeoning prisoner caseload and sought to curtail prisoner lawsuits that fail to state a claim and thus relieve the burden on the courts. Of particular concern to Senator Dole, one of the PLRA sponsors, was prisoner-litigants's *free* access to courts. For example, he noted that in Arizona, prisoner complaints alleging constitutional or statutory harms constituted forty-five percent of all civil cases filed in federal court. Senator Dole noted "most of these prisoner lawsuits were filed free of charge. No court costs. No filing fees.

---

**4.** The circuits are split on this issue and some have disagreed with this interpretation of § 1915(e)(2). *See, e.g., Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999); *Perkins v. Kansas Dep't of Corrections,* 165 F.3d 803, 806 (10th Cir.1999); *Anyanwutaku v. Moore,* 151 F.3d 1053, 1058 (D.C.Cir.1998). Interestingly, those courts that have reached

the conclusion that the PLRA does not abrogate the opportunity to amend rule have done so without engaging in any analysis of the statute, its legislative history or its purpose.

**5.** *See Armstrong v. Rushing,* 352 F.2d 836, 837 (9th Cir.1965).

This is outrageous and it must stop." 141 Cong. Rec. S14408–01, *S14413 (statement of Senator Dole).

To address this concern, Congress included several provisions in the PLRA to rein in the litigation abuses. First, Congress sought to require prisoner-litigants to pay filing fees if they could, even if the prisoner had to have his trust fund garnished:

> If a prisoner is unable to fully pay court fees and other costs at the time of filing a lawsuit, 20 percent of the funds in his trust account would be garnished for this purpose.... When average law-abiding citizens file a lawsuit, they recognize that there could be an economic downside to going to court. Convicted criminals should not get preferential treatment: If a law-abiding citizen has to pay the costs associated with a lawsuit, so too should a convicted criminal.

See 141 Cong. Rec. S14408–01, *S14413 (Statement of Sen. Dole).

In addition, Congress limited the number of inadequate[6] IFP complaints a prisoner could file to three (i.e., the "three-strikes provision"). *See Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir.1999). Nothing, to repeat, nothing in the PLRA precludes a prisoner from filing an infinite number of complaints, *as long as the public does not bear the burden of the costs of that filing. See id.*, 169 F.3d at 1180 ("IFP status is not a constitutional right.... Congress is no more compelled to guarantee free access to federal courts than it is to provide unlimited access to them.... [An inmate] may resume [his] appeal upon prepaying the filing fee.").

Finally, when Congress enacted § 1915(e)(2), Senator Dole noted that the dismissal provisions would allow federal courts to *"immediately* dismiss a complaint if ... the complaint does not state a claim upon which relief may be granted." 141 Cong. Rec. S14408–01, *S14414 (statement of Senator Dole) (emphasis added).

In as much as an opportunity to amend comes *before* dismissal it provides the opportunity to avoid dismissal entirely. Therefore, *immediate* dismissal must mean without leave to amend. Otherwise the dismissal could not be immediate.

The majority rejects this analysis. It argues that § 1915(e)(2) allows, but does not require, immediate dismissal of complaints that fail to state a claim. Indeed, the majority opinion would not allow immediate dismissal of a complaint that is not frivolous but fails to state a claim. As the majority points out, "When a case may be classified as frivolous or malicious, there is, by definition, no merit to the underlying action and so no reason to grant leave to amend." Majority Opinion at 1127 n. 8. Conversely, when a case is neither frivolous nor malicious, yet still fails to state a claim, it follows that there is some merit to the underlying action and thus reason to grant leave to amend. Therefore, under the majority opinion, any complaint that fails to state a claim is amendable and thus may not be immediately dismissed. This result disregards the clearly stated understanding of Senator Dole.

It should be emphasized that dismissal of a case without leave to amend for failure to state a claim is a dismissal without prejudice. Thus, the prisoner is *not* foreclosed from refiling that case if he so chooses. Of course, if the prisoner has exhausted his three free strikes he would have to pay the filing fees for the subsequent case. However, three *free* chances should be sufficient to allow a prisoner-litigant to put together an adequate complaint if it is indeed meritorious.

The PLRA plainly sought to remedy the problem of a clogged federal docket. "By allowing district courts to dismiss all meritless claims before service of process and without giving leave to amend, the statute reduces the cost of those [prisoner] suits to

---

6.  For the purposes of § 1915(e)(2)(B), an inadequate complaint is one that is frivolous, malicious, *fails to state a claim on which relief*

*may be granted,* or one that seeks monetary relief against a defendant who is immune from such relief (italics added).

the judicial system." *Christiansen,* 147 F.3d at 658. The court is no longer required to spend valuable judicial resources trying to decide if the inadequate IFP prisoner complaint can be cured by amendment and if so, exactly how it can be cured. The district court simply dismisses the complaint and the prisoner must decide whether to re-file.

## III.

### CONSTITUTIONALITY AND RETROACTIVITY ISSUES

To uphold the dismissal of Petitioner's complaint under § 1915(d), as I suggest, it is necessary to address the constitutionality of § 1915(e)(2) and its retroactive application.[7]

The Eighth Circuit's decision in *Christiansen v. Clarke,* 147 F.3d 655, correctly disposed of the constitutional issues. In *Christiansen,* an inmate appealed a district court's dismissal, without leave to amend, of his IFP complaint. He alleged that " § 1915(e)(2)(B)(ii) is unconstitutional because it allows the district court to dismiss the claim of an indigent prisoner plaintiff for failure to state a claim before service of process and without leave to amend." *Id.* at 656. The *Christiansen* inmate contended that "[b]ecause a court may not generally dismiss the claim of a paying plaintiff under Fed.R.Civ.P. 12(b)(6) before service of process and without leave to amend ... the statutory provision violates his rights to due process and equal protection." *Id.* at 657.

The Eighth Circuit concluded that Congress (1) had a legitimate interest in deterring prisoner litigation that has flooded our judiciary, and (2) Congress chose a means rationally related to the end it wished to accomplish, i.e., lessening the burden on the federal docket. The Eighth Circuit had no "doubt that in preserving scarce judicial resources by deterring baseless, frivolous, and malicious suits, Congress was furthering a legitimate state interest" and that erecting procedural bar-

riers to deter prisoners from filing free lawsuits at no cost to themselves, Congress selected a rational basis to achieve that interest. *Id.* at 658. "Th[e] provision merely raises the expected cost to a prisoner of filing a meritless lawsuit.... By allowing district courts to dismiss all meritless claims before service of process and without *giving leave to amend,* the statute reduces the cost of those suits to the judicial system." *Id.* (emphasis added).

The retroactivity issue presents no obstacles. Petitioner filed his suit on October 30, 1995; Congress enacted the PLRA on April 26, 1996. Petitioner suggests that we reconsider our decision in *Marks v. Solcum,* 98 F.3d 494, 496 (9th Cir.1996) (per curiam), in light of the recent Supreme Court case, *Martin v. Hadix,* 527 U.S. 343, 119 S.Ct. 1998, 144 L.Ed.2d 347 (1999). Petitioner argues that § 1915(e)(2) cannot apply to cases, such as his, filed before the PLRA's enactment. I disagree.

In *Marks,* 98 F.3d at 496, we concluded that § 1915(e)(2) "is a procedural rule which raises no retroactivity concerns." Petitioner contends that the Supreme Court's admonition in *Martin* that "the mere fact that a new rule is procedural does not mean that it applies to every pending case," 119 S.Ct. at 2006 (quoting *Landgraf v. USI Film Prod.,* 511 U.S. 244, 275 n. 29, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)), necessitates reconsideration of our holding in *Marks.*

The principles of retroactivity set forth by the Supreme Court in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, should govern. To determine whether a statute can be applied to cases already pending, we must first determine whether Congress has "expressly mandated the temporal reach of" the statute. *Martin,* 119 S.Ct. at 2003. If Congress has not so expressly mandated, we then must determine whether applying the statute to pending cases produces a genuine retroactive effect. *Id.*

---

7. For a discussion of the constitutionality and retroactivity of the "three-strikes" provision,

*see Rodriguez v. Cook,* 169 F.3d 1176 (9th Cir.1999).

 

We previously concluded in *Marks* that Congress has not limited the temporal reach of § 1915(e)(2). *See Marks*, 98 F.3d at 496. Petitioner agrees with that conclusion. The question, therefore, becomes whether the Supreme Court's opinion in *Martin v. Hadix* indicates that we decided *Marks* incorrectly. That is, does the application of § 1915(e)(2) to cases pending before its enactment produce a genuine retroactive effect? I would hold that it does not.

In *Martin*, the Supreme Court reiterated the rule it set forth in *Landgraf*: "The inquiry into whether a statute operates retroactively demands a common sense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment. . . .' This judgment should be informed and guided by 'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" 119 S.Ct. at 2006 (quoting *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483).

In *Marks*, the Court did just that, stating that "[b]ecause section 1915(e)(2) does not impair any substantive rights of prisoners, but instead merely affects the ability of prisoners to maintain appeals in forma pauperis, we conclude that section 1915(e)(2) is a procedural rule which raises no retroactivity concerns under *Landgraf*." 98 F.3d at 496. There is no reason to disturb the holding in *Marks*. Section 1915(e)(2), properly interpreted, neither impairs the right of a litigant to bring a suit nor disturbs the settled expectations of litigants such as petitioner. Instead, it simply affects the ability to file a case IFP, a privilege granted by Congress, not a right.

## IV.

### Conclusion

For the foregoing reasons, I would conclude that § 1915(e)(2) requires that the district court dismiss an IFP prisoner's complaint that fails to state a claim, immediately and without an opportunity to amend.